UNITED STATES v. REED et al.

(Circuit Court, D. Minnesota. December 23, 1892.)

1. PUBLIC LANDS—CANCELLATION OF PATENT ISSUED BY MISTAKE.

    Certain adjustments of land scrip locations, being contested, were appealed to the secretary of the interior, by whom it was held that the adjustments were invalid, and that the contesting claims must also be rejected, and the land disposed of under the public land laws. Thereafter one R. entered said lands, and obtained a final certificate. On the same day several other persons attempted to make entries or locations of the

same land, but their applications were denied, and they appealed to the commissioner of the general land office. Pending these appeals a motion was made for a review of the decision of the secretary of the interior in respect to the former adjustment and claims, and thereupon, in pursuance of a standing rule of the interior department, an order was made, suspending all action under the decision sought to be reviewed. But, notwithstanding such order, through the mistake of a subordinate clerk in the land department, R.'s entry was approved, and a patent was inadvertently issued to him. *Held*, that the patent should be canceled on a proceeding by the United States for that purpose.

2. SAME.

On a proceeding by the United States to cancel a patent inadvertently issued pending appeals by other claimants, the government is not bound to show that the other claimants would be successful in their appeal, but is entitled to have the patent canceled, unless the patentee proves that by the law properly administered he would be entitled to the patent, and it is doubtful whether even such proof would be admitted.

In Equity. Bill by the United States to cancel a land patent. Decree for complainant.

W. H. H. Miller, Atty. Gen., and Eugene G. Hay, U. S. District Atty., (Robert G. Evans, Special Asst. U. S. Atty., of counsel,) for the United States.

Billson & Congdon, for defendants.

NELSON, District Judge. The bill of complaint is filed by the United States against Thomas Reed, a citizen of the state of Nebraska, the Germania Iron Company, a corporation duly created, organized, and existing under the laws of the state of Minnesota, Emil Hartmann, and Richmond D. Mallet, citizens of the state of Minnesota. The relief sought in the bill of complaint is to cancel and vacate a patent issued on November 20, 1889, by inadvertence and mistake, and delivered November 29, 1889, to Thomas Reed, and to restrain the other defendants from setting up or asserting any title whatsoever under or through the said patent. The defendant Reed suffered a default; the other defendants answered the bill. After replication, a stipulation was entered into and filed by the parties agreeing upon certain facts. This stipulation and the admissions in the answer, with certain exhibits offered, and the testimony of the land department and subordinate clerks, present the case for the determination of the court.

FACTS.

The facts found are these, and are substantially set forth in the abstract of the brief of the counsel for the government:

(1) The land described in the patent was a part of the public domain held by the United States at the time of the issuing of the patent.

(2) On the 21st day of July, 1885, Orilie Stram, formerly Moreau, adjusted a location previously made on unsurveyed land of complainant with Sioux half-breed scrip, issued under an act of congress of July 17, 1854, to lots 1 and 2, and the S. W. 1-4 of the N. E. 1-4, and N. W. 1-4 of the S. E. 1-4, of section 30, township 63 N., range 11 W., and other land in Duluth land district of Minnesota; and that said loca-

tions were posted in the proper tract books of the office of the commissioner of the general land office on the 9th day of September, 1885.

(3) The validity of these adjustments was contested by one Fred T. Huntress, and Thomas W. Hyde and Angus McDonald made certain pre-emption claims to some of said tracts. Upon appeal to the secretary of the interior, who had jurisdiction over said matter and said claimants, the said secretary, on February 18, 1889, decided that said scrip locations were invalid, and should be canceled; that the pre-emption claims of Hyde and McDonald must be rejected; that the claim of Fred T. Huntress could not be recognized; and that the land in controversy must be disposed of under the public land laws of the United States applicable thereto.

(4) On February 23, 1889, Thomas Reed, one of the defendants, applied to make soldier's additional homestead entry of the S. W. 1-4 of the N. E. 1-4, and lots 1 and 2, section 30, township 63 N., range 11 W., Duluth, Minn., to the proper officers of the land office of the United States at Duluth, Minn., was allowed to make such entry, and obtained final certificate on said day, numbered 1,420.

(5) On the same day that said Reed made his entry Charles P. Wheeler applied to locate the S W. 1-4 of the N. E. 1-4 of said section 30 with Valentine scrip, (the character of which is shown in Exhibit 4, pages 68 to 69, inclusive;) and one Warren Wing applied to enter lot 2 of section 30, under section 2306 of the Revised Statutes of the United States, (Exhibit 4 page 51, and 5, page 72; answer, page 10;) each of said applicants, including said Reed, claiming that his application was prior to the others.

(6) On the morning of the day when the Reed entry was allowed one William M. Stokes was, among other applicants, to make various kinds of entries before and at the time of the opening of the doors of the local land office at Duluth, present at said doors, and attempting to enter the N. W. 1-4 of the S. W. 1-4 and the S. W. 1-4 of the N. E. 1-4 of the section aforesaid as a soldier's additional homestead.

(7) The applications of Wheeler, Wing, and Stokes were denied, and they appealed from such denial to the commissioner of the general land office.

(8) On February 18, 1889, and ever since, there has been in existence in the department of the interior a rule that motions for review of the decisions of the secretary of the interior should be filed in the office of the commissioner of the general land office, and that the commissioner should thereupon suspend action under the decision sought to be reviewed, and forward to the secretary such motion.

(9) Motions for review of the decision of the secretary of the interior of February 18, 1889, were duly made and filed on March 13 and 15, 1889, respectively, by the parties affected adversely by said decision. Thereupon an order was made suspending all action under the decision sought to be reviewed, and such order was of full force, and such motions were pending unheard and undetermined at the time and after the issuing of the patent sought to be canceled. The patent to said Reed, hereinafter referred to, was issued in direct violation or in ignorance of said order.

(10) At the time of and before the approval for patenting of the lands described in the Reed patent and the issuance of said patent, the appeals of Charles P. Wheeler, Warren Wing, and William M. Stokes from the rejection of their several applications hereinbefore referred to, were pending, unheard and undetermined, and have not since been heard or determined.

(11) While said appeals and motions were pending and undisposed of, a clerk of the general land office at Washington, whose duty it was to examine entries of the character described, in ignorance of the pendency of said conflicting claims, said motions, and said appeals, approved the lands described in the said patent for patenting to Thomas Reed, one of the defendants herein, and a patent was upon such approval issued to him on the 20th day of November, 1889. That said patent was signed by the secretary to the president, countersigned by the recorder of the general land office, each of whom, at the time they signed and countersigned said patent as aforesaid, were in ignorance of the pendency of the aforesaid conflicting claims, and acted wholly upon the said approval of said clerk. The approval of the entry for patent and the signatures to the patent were made notwithstanding the fact that a caveat pointing out the conflicts was on file with the rest of the entry papers relating to the lands involved, and such approval and signatures were made in ignorance of the contents of said caveat.

(12) Said patent was delivered and on the 29th day of November, 1889, recorded in Book D of Patents, p. 54, in the office of the register of deeds of St. Louis county, Minn.

(13) Demand has duly been made by and under the direction of the secretary of the interior upon the defendants, and each of them, for a relinquishment of all right, title, and interest in or to said land derived by them under or on account of the issuance of said patent, and said defendants, and each of them, have refused to comply with such demand.

(14)　　*　　*　　*　　*　　*　　*　　*　　*

(15) The answer of defendants other than Reed attempts to allege that such defendants took the real estate described in said patent in good faith, without notice of the circumstances attending the issuing of the patent, and for a valuable consideration. There is some evidence in the record bearing upon this question, but before the taking of the testimony was concluded solicitors for defendants notified complainant that such defense would not be relied upon, and therefore this point is not further noticed in the abstract of facts, and will not be referred to in the brief of complainant. This question being eliminated from the controversy, the contention stands the same as if between the government and the patentee Reed, and it is upon this theory that it will be submitted in complainant's brief.

## CONCLUSION.

That a public wrong was perpetrated upon the executive department by subordinate clerks, in consequence of which the department has disabled itself from discharging the duties imposed upon it by law, and that the complainant is entitled to the relief prayed for in

the bill of complaint. A decree is ordered in favor of the complainant

## MEMORANDUM.

The government can sustain a suit in equity to set aside a patent or cancel it when its duty to the public requires such action. The undisputed facts in this case show that by the inadvertence and mistake of a subordinate clerk the interior department was disabled from performing its function and discharging its legal duty to review contests properly before it. It was contemplated that the land department should consider contests like the one pending before it. A constructive fraud was perpetrated by the acts of subordinates in the department. A court of equity cannot be called upon to exercise its jurisdiction in a case more appropriate. When the legal rights of the parties have been changed by inadvertence and mistake, equity restores them to their former condition, when it can be done without interfering with new rights acquired on the strength and faith of the altered condition of the legal rights, and without injustice to the parties.

The contention of the defendants' counsel is that, notwithstanding the defendant Reed is shown to have obtained the patent irregularly, by the inadvertence and mistake of the subordinate official, the government, before it is entitled to relief, must, in addition, show that the defendant would not have prevailed if the rehearing and appeals had been heard. Such is not the rule applying to suits by the United States of this character. It applies only to cases brought for equitable relief to individuals. Where a patent has issued by mistake of its agents, equity affords relief to the government, as it would if corrupt conduct on the part of its officials is shown; and, when such is established, the patent must fall, unless the patentee proves that by the law, properly administered, he would be entitled to it; and even then it is doubtful whether a court of equity would receive proof of that kind after the mistake and inadvertence of the subordinate agents were established. In the case of Williams v. U. S., 138 U. S. 517, 11 Sup. Ct. Rep. 457, some wholesome doctrines are announced, applicable to the facts in this case, and the decision rests upon "the uncontrovertible fact that through inadvertence and mistake the land was certified, (patented.) * * *"

NOTE. Cases examined: Moffat v. U. S., 112 U. S. 24, 5 Sup. Ct. Rep. 10; U. S. v. Minor, 114 U. S. 233, 5 Sup. Ct. Rep. 836; Maxwell Land Grant Case, 121 U. S. 325, 7 Sup. Ct. Rep. 1015; U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. Rep. 850; U. S. v. Beebe, 127 U. S. 338, 8 Sup. Ct. Rep. 1083; U. S. v. Iron Silver Min. Co., 128 U. S. 674, 9 Sup. Ct. Rep. 195; Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. Rep. 457; Marquez v. Frisbie, 101 U. S. 473; Casey v. Vassor, 50 Fed. Rep. 258; U. S. v. Marshall Silver Min. Co., 129 U. S. 579, 9 Sup. Ct. Rep. 343; U. S. v. Missouri K. & T. Ry. Co., 141 U. S. 358, 12 Sup. Ct. Rep. 13.