# EL PASO BRICK COMPANY, APPELLANT, v. JOHN H. McKNIGHT.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 185. Argued January 22, 23, 1914.—Decided April 6, 1914.

Locators of mining claims have the exclusive right of possession of all the surface so long as they make the improvements or do the annual assessment work required by Rev. Stat., § 2324. To convert this defeasible possessory right into a fee simple the locator must comply with the provisions of Rev. Stat., §§ 2325, 2333.

The entry by the local land officer issuing the final receipt to a locator is in the nature of a judgment *in rem* and determines the validity of locations, completion of assessment work and absence of adverse claims.

The holder of a final receipt is in possession under an equitable title, and until it is lawfully canceled is to be treated as though the patent had been delivered to him. *Dahl* v. *Raunheim*, 132 U. S. 260.

While the General Land Office has power of supervision over acts of local officers and can annul entries obtained by fraud or made without authority of law, it may not arbitrarily exercise this power; and if a cancellation is made on mistake of law it is subject to judicial review when properly drawn in question in judicial proceedings.

Under the policy of the land laws the United States is not an ordinary proprietor selling land and seeking the highest price, but offers liberal terms to encourage the citizen and develop the country.

Where there has been compliance with the substantial requirements of the land laws, irregularities are waived or permission given to cure them; and so *held* that, under the circumstances of this case, as there had been proper posting under Rev. Stat., §§ 2325 and 2333, the fact that the original affidavit of posting was made before an officer residing outside the district and not within the district as required by § 2335, did not render the entry void. The defect was curable and cancellation of entry for that defect alone was improper.

The yielding of a locator holding a final receipt to an erroneous ruling does not destroy the rights with which he has become vested by full compliance with the requirements of Rev. Stat., § 2325.

*Quære,* whether § 2135, Comp. Laws New Mexico, imposing upon a

locator of mineral lands the burden of proving that he has performed the annual assessment work, is void as in conflict with the Federal statutes. See *Hammer* v. *Garfield,* 130 U. S. 29.

*Quære,* whether an affidavit of work offered for one purpose by an adverse claimant can be used for another purpose by the locator as substantive evidence in the case.

A locator acquires no rights by locating on property that had previously been, and then was, segregated from the public domain.

16 New Mex. 721, reversed.

IN proceedings brought by McKnight to try the right of possession to conflicting mining locations, it appeared that the defendant, the El Paso Brick Company, was in possession of the Aluminum International and Hortense claims, constituting what was known as the Aluminum group of placer mines. It held under locations made prior to January, 1903. In 1905 the company decided to apply for a patent to the land which embraced about 411 acres. Accordingly, on August 2, 1905, it filed with the Register of the land office at Las Cruces, Dona Ana County, New Mexico, an application for a patent together with an affidavit (executed before an officer residing outside of the mining district) that notice of the application had been posted on the land. These papers were filed with the Register who gave the further notice required by statute. No protest or adverse claim was filed by any person. The Brick Company paid $1027.50, being the purchase price fixed by Rev. Stat., § 2333, and on October 23, 1905, the land officers allowed an entry on which the Receiver issued a final receipt—the material portions of which were as follows:

"United States Land Office at Las Cruces, N. Mexico,
                                        "October 23, 1905.

"Received from The El Paso Brick Company, El Paso, Texas, the sum of Ten hundred and twenty-seven and 50–100 dollars, the same being payment in full for the area embraced in that Mining Claim known as the 'Alum-

inum Placer Group' unsurveyed . . . embracing 410.90 acres in the Brickland Mining District, in the County of Dona Ana and Territory of New Mexico, as shown by the survey thereof.

"$1027.50.          Henry D. Bowman, Receiver "

The entry and this final receipt *prima facie* entitleu the Company to a patent, which however was not issued because various parties filed protests with the Land Commissioner in which it was asserted that the Brick Company's locations were originally void, or if valid, had been forfeited. It was also contended that the Company was not entitled to a patent because the affidavit showing the posting of the notice on the land had not been signed before an officer residing within the land district as provided in Rev. Stat., § 2335, which declares that "all affidavits required to be made under this chapter [mining laws] may be verified before any officer authorized to administer oaths within the land district where the claims may be situated."

Notice of these protests was given to the Brick Company which was allowed 60 days within which to show cause why the entry should not be cancelled. "In response numerous affidavits and exhibits designed to overcome the objections were filed on behalf of the Company," among which was a "supplementary affidavit with reference to such posting and such claim which was in compliance with the laws of the United States and was verified before a proper officer."

On September 4, 1906, the Commissioner ruled that the entry was fatally defective because the original affidavit as to posting had not been executed before an officer residing in the land district. From that ruling the Brick Company appealed.

There was a hearing before the Assistant Secretary of the Interior, who, on September 9, 1908, rendered a decision, 37 L. D. 155, in which,—after discussing the pro-

visions of Rev. Stat., §§ 2325, 2335, and quoting from various rulings of the Land Department and courts,—he held that the fact that the affidavit of posting had been signed before an officer residing outside of the district, was a fatal defect, which invalidated the entire proceeding. Among other things, he said (p. 159): "The defect is not a mere irregularity which may be cured by the subsequent filing of a properly verified affidavit. The statutory provisions involved are mandatory. Their observance is among the essentials to the jurisdiction of the local officers to entertain the patent proceedings. The requisite statutory proof as to posting not having been theretofore filed, the Register was without authority to direct the publication of the notice or otherwise proceed; and the notice, although in fact published and posted, being without the necessary legal basis, was a nullity and ineffectual for any purpose. The patent proceedings therefore fall and the entry will be canceled."

The record further recites that on November 24, 1908, the Brick Company waived its right to petition for a review of such decision and "thereupon such decision and the cancellation of said entry became final and said entry was cancelled on the records of the Land Office." On the next day, November 25, 1908, the Brick Company filed at the local land office a second application for patent. McKnight thereupon filed an adverse claim in which he set up that the land described in the Brick Company's application embraced within its limits the Lulu and Agnes claims which had been located by him in April, 1905, and relocated in May, 1906, at which time he also located the Tip Top, Lynch and Aurora claims. The patent proceedings in the Local Land Office were stayed in order that McKnight might, as provided in Rev. Stat., § 2326, bring a suit in a court of competent jurisdiction to try the right of possession.

On January 2, 1909, McKnight brought such suit in the

District of Dona Ana County, New Mexico. It was tried
November 8, 1909, before a judge without a jury. At the
hearing McKnight introduced the certificates of the loca-
tions described in his complaint and evidence tending to
show that he had done the required assessment work on
his five claims. In support of his contention that the
Brick Company had forfeited its rights, by failing to do the
annual assessment work, the record recites that he offered
"certified copies of proof filed by the Brick Company in
June, 1905, and December, 1906, for the purpose of show-
ing, in connection with the testimony of the witness [the
keeper of the county records] that there had been no satis-
factory proof of labor filed for any year previous to 1906."
These certified copies consisted of affidavits by the
President of the Brick Company that it had done more
than $5,000 worth of work on its locations during each of
the years 1903, 1904 and 1906. There was no ruling by
the court limiting the effect of the affidavits as evidence,
but it appears that McKnight contended that, as the
names of the persons actually doing the work were not
stated in the affidavit and as the first of the affidavits was
made in April, 1905, the burden of showing that the work
had actually been done for 1903 and 1904 was cast on the
Brick Company by virtue of the provisions of § 2315 of the
Compiled Laws of New Mexico.[1]  The Brick Company, on

---

[1] "SEC. 2315. The owner or owners of any unpatented mining claim
in this Territory, located under the laws of the United States and of
this Territory, shall, within sixty days from and after the time within
which the assessment work required by law to be done upon such claim
should have been done and performed, cause to be filed with the re-
corder of the county in which such mining claim is situated, an affi-
davit setting forth the time when such work was done, and the amount,
character, and actual cost thereof, together with the name or names
of the person or persons who performed such work; and such affidavit,
when made and filed as herein provided, shall be *prima facie* evidence
of the facts therein stated. The failure to make and file such affidavit
as herein provided shall, in any contest, suit or proceedings touching

the other hand, appears to have contended that this territorial statute was not only void as being in conflict with the Federal statutes, but that the affidavits offered by plaintiff showed on their face that many times the amount of assessment work required had been done in 1903, 1904 and 1906, thus segregating the land from the public domain and rendering McKnight's subsequent locations nugatory.

At the conclusion of the evidence the court took the case under advisement and on December 17, 1909, rendered a judgment for McKnight which was affirmed (16 New Mex. 721) by the Supreme Court of New Mexico. The case was then brought here on appeal.

*Mr. Francis W. Clements,* with whom *Mr. Aldis B. Browne, Mr. Alexander Britton, Mr. Evans Browne, Mr. W. A. Hawkins* and *Mr. John Franklin* were on the brief, for appellant.

*Mr. Eugene S. Ives* for appellee.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

McKnight brought suit against the El Paso Brick Company to try the right of possession to conflicting mining locations. In his complaint he asserted his own title and attacked that of the Defendant under locations older in date but which he claimed had been forfeited by failure to do the annual assessment work for 1903 and 1904, thereby leaving the land open to the locations made by McKnight in 1905 and 1906. The Brick Company, while insisting that the plaintiff's own evidence proved that the assess-

the title to such claim, throw the burden of proof upon the owner or owners of such claim to show that such work has been done according to law."

ment work had in fact been fully performed, relied on the legal effect of the company's application for a Patent to the land and the final receipt issued to it by the Receiver of the Local Land Office in October, 1905. To this the plaintiff replied that the entry, on which the receipt issued, had been cancelled on the ground that the patent proceedings were absolutely void because the statutory affidavit of posting had not been filed.

1. Locators of mining claims have the exclusive right of possession of all the surface included within the exterior limits of their claims so long as they make the improvements or do the annual assessment work required by the Revised Statutes, § 2324. The law, however, provides (Rev. Stats., §§ 2325, 2333) a means by which the locator can pay the purchase price fixed by statute and convert the defeasible possessory title into a fee simple. Sixty days' notice must be given in order that all persons having any adverse claim may be heard in opposition to the issue of a patent. That notice is threefold. It must be given by publication in the nearest newspaper, by posting in the Land Office, and by posting on the land itself, and it is provided in the statute that this latter fact may be proved by the affidavit of two persons before an officer residing within the land district (Rev. Stat., § 2335). All persons having adverse claims under the mining laws may be heard in objection to the issuance of a patent. But (§ 2325) "if no adverse claim shall have been filed . . . it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third persons to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter" [relating to mineral lands].

2. In the present case the Brick Company's application for a patent was filed, each of the several forms of notice

required by statute was given, no adverse claim was filed, the purchase price was paid to the Government, and a final receipt was issued by the local land office. The entry by the local land officer issuing the final receipt was in the nature of a judgment *in rem* (*Wight* v. *Dubois*, 21 Fed. Rep. 693) and determined that the Brick Company's original locations were valid and that everything necessary to keep them in force, including the annual assessment work, had been done. It also adjudicated that no adverse claim existed and that the Brick Company was entitled to a patent.

From that date, and until the entry was lawfully cancelled, the Brick Company was in possession under an equitable title, and to be treated as "though the patent had been delivered to" it. *Dahl* v. *Raunheim*, 132 U. S. 260, 262. And, when McKnight instituted possessory proceedings against the Brick Company, the latter was entitled to a judgment in its favor when it produced that final receipt as proof that it was entitled to a patent and to the corresponding right of an owner.

Nor should the result have been different when the record showed that the entry and final receipt, properly issued, had been improperly cancelled. It is true that the order of the Department was a denial of the patent, but it was not a conclusive adjudication that the Brick Company was not entitled to a patent, nor could such an order deprive the Brick Company of rights vested in it by law. For while the General Land Office had power of supervision over the acts of the local officers, and could annul entries obtained by fraud or made without authority of law, yet if the Department's cancellation was based upon a mistake of law, its ruling was subject to judicial review when properly drawn in question in judicial proceedings, inasmuch as the power of the Land Office is not unlimited nor can it be arbitrarily exercised so as to deprive any person of land lawfully entered and paid for. *Cornelius* v.

*Kessel*, 128 U. S. 456, 461; *Parsons* v. *Venzke*, 164 U. S. 89.

3. So that the case involves a determination of the single question as to whether the patent was properly refused by the Land Department because of the objection that the Brick Company had failed to comply with the terms of the law relating to Mineral Land. Rev. Stat., § 2325. That can be determined by an inspection of the record, in which the order appears. It shows that the cancellation of the entry was not based on the Brick Company's failure to do the annual assessment work, or to give the proper notice, or to pay the statutory price, but solely for the reason that the affidavit of posting was executed before an officer who resided outside of the land district.

That decision (37 L. D. 155), though supported by some Departmental rulings of comparatively recent date, was in conflict with the established practice of the Land Department, and was expressly and by name overruled, on July 29, 1911, in *Ex parte Stock Oil Company*, 40 L. D. 198, which reaffirmed prior decisions to the effect that irregularities in proof, including the execution of affidavits before other than the designated officers, might be supplied, even on appeal.

These and similar rulings, previously followed in the Department, are manifestly correct. They accord with the policy of the land laws, under which the United States does not act as an ordinary proprietor seeking to sell real estate at the highest possible price, but offers it on liberal terms to encourage the citizen and to develop the country. The Government does not deal at arm's length with the settler or locator and whenever it appears that there has been a compliance with the substantial requirements of the law, irregularities are waived or permission is given, even on appeal, to cure them by supplemental proofs. *United States* v. *Marshall Mining Co.*, 129 U. S. 579, 587. In

the present case such proof by supplemental affidavits, properly executed, showed that the land had been properly posted. But that fact was not allowed to have any effect because of the mistaken view that, as the original affidavit of posting had been signed before an officer residing outside of the land district, the patent proceedings were absolutely void. This confused service by proper posting—which was jurisdictional,—with defective proof of such service which—like the defective return of an officer,—could be corrected. Under the law, jurisdiction depended upon giving notice by publication in a newspaper, by posting in the land office, and by posting on the land itself, —the statute directing how the giving of such notice should be proved. But irregularities in complying with such directory provision could be cured, and when cured, as it was here, the patent should have been issued. The cancellation of the entry was based on a plain error of law, and though there was no appeal in fact, and no right of appeal to the courts, the ruling did not operate to deprive the Brick Company of its property in the mines. The fact that the Brick Company, perforce, yielded to the erroneous ruling, and instituted new proceedings in order to secure a patent, as evidence of its title, did not destroy the rights with which the Company had become invested by full compliance with the requirements of Rev. Stat., § 2325. When, therefore, in the suit to try the right of possession the plaintiff asked that proper effect be given to the final receipt and the entry on which it was based as a judgment *in rem*, it was not making, as is contended, a collateral attack on the order of the Land Department, but was merely relying on the valid entry and asking the court to decline to give effect to the erroneous cancellation.

4. This conclusion makes it unnecessary to decide the question as to whether the territorial statute, imposing upon the locator the burden of proving that he has performed the annual assessment work, is void as being in

conflict with the Federal statutes, which require no such annual proof, raise no presumption of abandonment and as construed in *Hammer* v. *Garfield,* 130 U. S. 291, demand clear and convincing proof that work has not been done before a forfeiture can be declared. It also makes it unnecessary to determine whether the affidavit of work being offered for one purpose by McKnight could be used for another purpose by the Brick Company as substantive evidence in the case.

Many pages of the briefs are devoted to a discussion of these questions, but if any of them were decided in favor of the Brick Company it could not increase its rights. If the legal propositions involved could be decided in favor of McKnight that could not overcome the fact that the issuance of the final receipt to the Brick Company on October 23, 1905, was an adjudication not only that the Brick Company was entitled to a patent, but that McKnight then had no adverse claim to the land. Of course he acquired none in May, 1906, by locating on property that had previously been and then was segregated from the public domain.

The judgment of the Supreme Court of the Territory of New Mexico is reversed and the case is remanded to the Supreme Court of the State of New Mexico for further proceedings not inconsistent with this opinion.

*Reversed.*