UNITED STATES ex rel. PUCKETT, Regional Adm'r, Bureau of Land Management v. MORLEY et al.

No. A–7680.

District Court, Alaska.
Third Division, Anchorage.
Dec. 17, 1952.

Seaborn J. Buckalew, U. S. Atty., Anchorage, Alaska, for plaintiff.

Defendants, pro se.

DIMOND, District Judge.

This suit arose out of the location by the defendants of placer mining claims for the purpose of removing the gravel therefrom on land immediately adjoining the incorporated City of Anchorage, Alaska, lying northerly of and adjoining what is known as the Fourth Addition to the City and about 1500 feet north of Merrill Field Airport. The United States Government, upon relation of Lowell Puckett, Regional Administrator, Bureau of Land Management at Anchorage, Alaska, brought the suit to enjoin the defendants from removing the gravel from the claim so located.

The land involved had been "withdrawn from settlement, location, sale, entry or other disposition and reserved for townsite purposes" by lawful Executive Order No. 1919½ dated April 21, 1914, which was amended and enlarged by Executive Order No. 3672, dated May 8, 1922. It appears incontestible that those orders effectively served to withdraw the land from location as placer mining claims.

Under the Act of Congress of August 30, 1949, 63 Stat. 679, Title 48, §§ 364a to 364e, inclusive, U.S.C.A., generally known as the Alaska Public Sales Act, and here-inafter referred to as the "Act", and the rules and regulations made thereunder, the lands were classified for sale and sold to various purchasers on April 19, 1952. The defendants' notice of location of placer claim is dated and was filed for record in the office of the United States Commissioner and Recorder at Anchorage, Alaska, on April 18, 1952.

The Act provides that patents may be issued to the purchasers of land at such sales under the conditions and subject to the restrictions provided in said Act and the rules and regulations made in accordance therewith. The Act contains a reservation to the United States of all minerals in the lands so sold and patented together with the right to prospect for, mine and remove the same. Section 364c containing that reservation is here quoted:

"Patents under said sections shall issue only after survey, and shall contain a reservation to the United States of all minerals in the lands patented, together with the right to prospect for, mine, and remove the minerals, and such other reservations as may be necessary and proper: Provided, That, notwithstanding the provisions of any Act of Congress to the contrary, any person who hereafter prospects for, mines, or removes any minerals from any land disposed of under said sections shall be liable for any damage that may be caused to the value of the land and tangible improvements thereon by such prospecting for, mining, or removal of minerals. Nothing in this section shall be construed to impair any vested right in existence on August 30, 1949."

The Government asserts that the land was not open to location under the placer mining laws because it had been withdrawn from settlement, location, entry or other disposition and reserved for townsite purposes by the Executive Orders above mentioned, and that the Act segregates the land from mineral location until actual patent is issued to the surface owner as provided in the rules and regulations made pursuant to the Act, 43 C.F.R.1951 Supp., embracing the following:

"Sec. 75.29 Effect of application; segregation of land. (a) Subject to valid prior rights, the filing of an application in conformity with the regulations in this part will segregate the land applied for from application, entry, or settlement under any public land laws or from mining locations except as provided in Sec. 75.39, pending classification of the land under the act. * * *"

"Sec. 75.35 Certificate of purchase; rights and limitations; survey. (a) When the regional administrator is satisfied that the successful bidder is qualified, that he has the intention and financial means to develop and use the land in accordance with the act and his proposed utilization program, the regional administrator will authorize the issuance by the manager of a certificate of purchase on Form 4–1139, containing the reservations as listed in the published notice of sale. * * *"

"Sec. 75.37 Termination of certificate; removal of improvements. (a) At the end of three years from the date of issuance, unless there is then pending an application for the issuance of a patent filed in accordance with Sec. 75.38, the certificate of purchase will be void and of no further effect, all rights thereunder will terminate; and no moneys paid thereon may be returned. No extension of time for compliance with the terms of the certificate of purchase can be granted. (b) Thereupon the manager will allow the approved holder of the certificate of purchase 90 days from notice within which to remove from the land any materials, improvements, structures, or other property placed thereon. After the 90-day period or any extension thereof granted by the manager because of adverse climatic conditions or other sufficient cause, all such materials, improvements, structures, and property not removed will become the property of the United States. * * *"

That placer mining locations may be made only upon public land that has not been legally reserved or appropriated to any other use and purpose is too well settled to admit of debate. Copper Belt Silver and Copper Mining Company, 51 LD 475, 479; El Paso Brick Co. v. McKnight, 233 U.S. 250, 34 S.Ct. 498, 58 L.Ed. 943. So the primary question to be resolved here is whether under the various laws, Executive Orders and rules and regulations referred to, including the general mining laws of the United States, the land involved in this litigation was open to location for placer mining at the time of its location by the defendants.

It is here found as a matter of law, that the land was reserved from mining location by the Executive Orders of April 21, 1914 and May 8, 1922, and that under the circumstances here presented, such reservation so made exists until actual patent is issued to the surface owner upon sale made under the Act. Therefore, when the defendants Morely and Edwards attempted to locate the land as placer ground on April 18, 1952, it was not open to such location under the laws of the United States.

It is asserted in the pleadings and confirmed by common knowledge, that the removal of the "minerals", i.e., the gravel from the land, (2 Lindley on Mines, 3rd Ed. Sec. 428, p. 1014) would entirely destroy its usefulness to the owner who purchased it at the sale made under the Act. Such a mining operation would almost certainly leave in the tract designed for housing and for use as commercial purposes, a deep and unsightly and probably unsanitary pit surrounded by a settled community on the very margin of the City of Anchorage and in the midst of its populated area. While the Act provides for damages only, it seems clear that the equity powers of the Court may be rightly invoked to prevent unlawful and irreparable damage in the first instance.

The permanent injunction prayed for may be granted.

Findings of fact and conclusions of law in accordance herewith may be prepared and submitted.