Patrick A. McKENNA, Appellant,

v.

Fred A. SEATON, Secretary of the Interior, and John C. de Armas, Jr., Appellees.

No. 14095.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 13, 1958.

Decided March 20, 1958.

Petition for Rehearing In Banc Denied May 9, 1958.

Certiorari Denied Oct. 13, 1958. See 79 S.Ct. 57.

Messrs. Robert H. Rines, Boston, Mass., and Samuel Nakasian, Washington, D. C., for appellant.

Mr. Fred W. Smith, Attorney, Department of Justice, with whom Mr. Roger P. Marquis, Attorney, Department of Justice, was on the brief, for appellee Seaton. Mr. S. Billingsley Hill, Attorney, Department of Justice, also entered an appearance for appellee Seaton.

Mr. Marvin J. Sonosky, Washington, D. C., for appellee de Armas.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

The Secretary of the Interior, an appellee, on May 18, 1956, issued an oil and

gas lease of acquired land [1] to John C. de Armas, Jr., also an appellee, rather than to competing applicant Patrick A. McKenna, appellant. McKenna sued in the District Court for cancellation of the de Armas lease and for a direction that the Secretary issue a lease to McKenna as the first qualified applicant.[2] On motions for summary judgment filed by the Secretary, by de Armas, and by McKenna,[3] the court, with the proceedings in the Department of Interior before it, granted the motions of the Secretary and of de Armas, and dismissed McKenna's complaint. We affirm for reasons herein stated.

De Armas filed his application April 2, 1951. McKenna filed his August 17, 1954. De Armas accordingly was first in time by more than three years. If he was qualified as well he was entitled to the lease in preference to McKenna. This is so because the lease to be issued was of the noncompetitive character covering acquired land not within a known geological structure. In this situation the governing statute provides that the lease shall go to "the person first making application for the lease who is qualified to hold a lease." [4] Section 17 of the Mineral Leasing Act of February 25, 1920, 41 Stat. 443, as amended, 30 U.S.C. § 226 (1952), 30 U.S.C.A. § 226.[5] The statute also provides, however, that an applicant shall not hold "at one time oil or gas leases exceeding in the aggregate fifteen thousand three hundred and sixty acres granted hereunder in any one State." Section 27 of the Act, 41 Stat. 448, as amended, 30 U.S.C. § 184 (1952), 30 U.S.C.A. § 184.[6] De Armas' holdings did not disqualify him under this provision; but McKenna contends that de Armas did not include in his application all the information about his holdings required by applicable regulations and, therefore, this disqualified him. De Armas' application did state that he owned no more than the permitted acreage, which was all that was required to be stated by the regulations for public land applications, 15 Fed.Reg. 8583 (1950), 43 C.F.R. § 192.42(a) (Supp.1951),[7] though not for acquired land. The latter called for a listing by

1. The term "acquired lands" is used in distinction to "public lands." The only difference material here is that oil and gas leases of the latter are authorized by the Mineral Leasing Act of 1920, 41 Stat. 437, as amended, 30 U.S.C. § 181 et seq. (1952), 30 U.S.C.A. § 181 et seq. whereas leases of the former are authorized by the Acquired Lands Act of 1947, 61 Stat. 913, 30 U.S.C. § 351 et seq. (1952), 30 U.S.C.A. § 351 et seq.

2. The lease for which both applied embraced 1,865.36 acres in Ts. 24 S., Rs. 32 and 33 E., Louisiana Meridian, Louisiana.

3. McKenna stated in his motion:
"As appears from the pleadings and the admissions of the defendant [the Secretary] and the intervener [de Armas] contained in their respective motions for summary judgment and the accompanying points and authorities and brief, together with the exhibits accompanying the same, upon which the plaintiff will rely at the hearing on this motion, *there is no genuine issue as to any material fact.*" [Italics supplied.]

4. The requirements for qualification set by the statute involve only citizenship, 41 Stat. 437 (1920), as amended, 30 U.S.C. § 181 (1952), 30 U.S.C.A. § 181, and acreage limitation, 41 Stat. 448 (1920), as amended, 30 U.S.C. § 184 (1952), 30 U.S.C.A. § 184.

5. This and other provisions of the 1920 Act are made applicable to the leasing of acquired lands by section 3 of the 1947 Act, 61 Stat. 914, 30 U.S.C. § 352 (1952), 30 U.S.C.A. § 352.

6. Amended August 2, 1954, to increase the allowable acreage to 46,080, a provision not here material. 68 Stat. 648, 30 U.S.C. § 184 (Supp. IV, 1957), 30 U.S.C.A. § 184.

7. This section provided: "To obtain a noncompetitive lease, an offer to accept such a lease must be made on Form 4-1158, 'Offer and Lease Form.'" Paragraph 5(b) of that form contained the following certificate which the applicant must sign:
"Offeror's other interests direct and indirect in oil and gas leases and applications or offers therefor in the same State do not exceed 15,360 chargeable acres." Form 4-1158 is printed as 15 Fed.Reg. 8585 (1950).

the applicant of his leasehold interests, with reference to their serial numbers. 12 Fed.Reg. 8678 (1947), 43 C.F.R. § 200.5(a) (1) (1949). Previous to January 28, 1951, this listing had been required in applications embracing each category of land, see ibid and 13 Fed. Reg. 9567 (1948), 43 C.F.R. § 192.42(a) (3) (1949), but effective that date had been eliminated as to public land, in favor simply of an affirmative statement that the applicant did not own leasehold interests in the same state covering more acreage than the statutory maximum. 15 Fed.Reg. 8583 (1950), 43 C.F.R. § 192.42 (a) (Supp.1951).[8] The discrepancy between the regulations was rectified November 3, 1954,[9] when applications for acquired land were also permitted to contain merely the statement authorized by the January 28, 1951, amendment of the public land regulations, 19 Fed.Reg. 7127, 43 C.F.R. § 200.5 (1954).

In the meantime, in what became known as the first Hooper decision, of August 3, 1954, the Secretary ruled that the separate listing in acquired land applications ·was mandatory, but that an omission in this regard was a curable defect. Moreover, he ruled that priority would pertain only as of the time the defect was cured by the filing of the information as a part of the application.

At the request of the Bureau of Land Management the Secretary reconsidered his first Hooper decision. The Bureau advised the Secretary that ever since the regulations for public land applications had been amended January 28, 1951, the Bureau had considered separate listing of holdings no longer necessary in applications for leases of acquired land either, and had processed many applications and issued many leases under this practice

as compliance with 12 Fed.Reg. 8678 (1947), 43 C.F.R. § 200.5(a) (1) (1949).

In view of this situation the Secretary, on October 28, 1954, in his second Hooper decision, held that to deny priority to all applications filed before August 3, 1954, on the ground they did not contain the separate listing would be "a harsh result." On the basis of this and other · considerations, citing Bassie, et al., Chapman and Kirchner, 59 I.D. 235, and notwithstanding his view that the Bureau's practice was "not legally justifiable, and acquired land lease applications which do not contain the statement required by 43 CFR 200.5 are defective," he ruled,

"fairness and equity would seem to require that an applicant or a lessee who has filed an application deficient in this respect in reliance upon the administrative construction should be given time to cure the defect by supplying the details required by the regulation without loss of priority, if all else is regular."

Applicants were given until December 1, 1954, to cure the defect.

On October 21, 1954, de Armas filed a corrected application, listing his leaseholdings. In the meantime, between the first and second Hooper decisions, McKenna had filed, August 17, 1954, listing his leaseholdings. We agree with the District Court in rejecting his claim that this gave him priority over de Armas.

■ Although the Secretary said that the practice adopted by the Bureau beginning January 28, 1951, was "not legally justifiable," the fact is he decided that an application filed subsequent to that date, though defective in omitting separate listing of other interests, could be

8. When acquired lands were placed under the authority of the Secretary by the Act of August 7, 1947, 61 Stat. 913, 30 U.S.C. § 351 (1952), 30 U.S.C.A. § 351, the Secretary was authorized to issue leases on such lands, insofar as pertinent, "under the same conditions as contained in the leasing provisions of the mineral leasing laws," that is, the laws governing public land, and to prescribe

regulations which were, to the extent applicable, to be the same as those governing public land. 61 Stat. 914, 915 (1947), 30 U.S.C. §§ 352, 359 (1952), 30 U.S.C.A. §§ 352, 359.

9. The regulation was issued by the Secretary on October 28, 1954, but not printed in the Federal Register until November 3.

corrected without loss of priority if otherwise regular. De Armas' application was corrected and was otherwise regular as well as long prior in time. And even before correction it conformed with a practice in general use which the Bureau construed as sufficient. In these circumstances we cannot say that the issuance of the lease to de Armas was arbitrary, capricious, or otherwise illegal. He had met the requirements of the statute itself, which, moreover, contemplated administration of leases on acquired land as nearly as possible like those on public land. See note 4, supra. Uniformity in practice had been adopted pending reassertion of uniformity in terms of regulations. To decide that the defect was curable within a specified time without loss of priority appears to us to be an entirely fair, reasonable, and rational administrative action, not inconsistent with any statutory provision or any principle of law or equity. No regulation required the Secretary to hold that the defect in de Armas' application deprived him of priority or disqualified him.

In support of his contrary position McKenna cites United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, and Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403, the latter of which applied the principles laid down in the former. We think those principles are not applicable. In Accardi it is held that where the Attorney General, in fulfilling his responsibilities in connection with the deportation of certain aliens under the Immigration Act of 1917, 39 Stat. 889, as amended, 8 U.S.C. § 155(c) (1946 ed. Supp. V, 1952),* had by regulation prescribed that there should be proceedings before, and a decision by, the Board of Immigration Appeals prior to decision by the Attorney General himself, the Attorney General could not "side-step the Board or dictate its decision in any manner." 347 U.S. at page 267, 74 S.Ct. at page 503. In applying the underlying Accardi principles in Service, involving the discharge of an employee under regulations relating to loyalty and security, the Court held that regulations validly prescribed by a Government administrator were binding upon him as well as upon the citizen, even when the administrative action under review was discretionary in nature. In both Accardi and Service the regulations were for the obvious purpose of aiding the Government in reaching a correct decision affecting an individual who claimed the benefit of the prescribed administrative procedures.

The case before us is quite different. A choice was here to be made between two individuals claiming the same right. The Secretary was to decide which of the two was the first qualified applicant. One of the applicants had not initially complied fully with an applicable regulation. But no law or regulation required the Secretary to hold that this in itself disqualified that applicant so as to give priority to another who was later by three years but who complied literally with that particular regulation.[10] The Secretary merely decided that the defect in de Armas' application could be cured within a specified time without loss of his priority. This was not a failure to enforce any regulation, for none bound the Secretary to do otherwise. He simply gave more weight to three years of priority than to what he considered to be a curable irregularity in an application—an irregularity which had no special significance whatever in terms of a fair and reasonable administration of the land laws. See El Paso Brick Co. v. McKnight, 233 U.S. 250, 258–259, 34 S.Ct. 498, 501, 58 L.Ed. 943, where, in a case involving a conflict between two claimants, it is said:

"The government does not deal at arm's length with the settler or locator and whenever it appears that

* Now 8 U.S.C.A. § 1254.

10. Cf. 15 Fed.Reg. 8583 (1950), as amended by 16 Fed.Reg. 7419 (1951), 43 C.F.R. § 192.42(g) (Supp.1952); Form 4–1158, printed at 15 Fed.Reg. 8585 (1950). And see 19 Fed.Reg. 9039 (1954), 43 C.F.R. § 200.8(g) (1954).

there has been a compliance with the substantial requirements of the law, irregularities are waived or permission is given, even on appeal, to cure them by supplemental proofs. United States v. Marshall Silver Mining Co., 129 U.S. [579], 587, 9 S.Ct. 343, 32 L.Ed. [734], 737."

Moreover, there is a long line of decisions of the Supreme Court, of this court, and of other courts, that the primary responsibility for the solution of such questions as this, arising in the administration of the land laws, is with the Secretary of the Interior, whose decision will not be superseded by the courts except under limited conditions. These conditions are expressed variously in the opinions of the courts, and we need not adopt as applicable to the circumstances of the present case all prior expressions. But a fair common denominator, as it were, of the conditions which will cause judicial repudiation of administrative action by the Secretary, is at least that he is plainly wrong. Lane v. Hoglund, 244 U.S. 174, 37 S.Ct. 558, 61 L.Ed. 1066; Chapman v. Santa Fe Pac. R. Co., 90 U.S.App.D.C. 34, 198 F.2d 498. We think here he was right, and well within his lawful authority, in holding that de Armas was the first qualified applicant

McKay v. Wahlenmaier, 96 U.S.App. D.C. 313, 226 F.2d 35, also presented a very different situation. We there held that one of the applicants could not legally be given priority as the first qualified applicant, because of several serious violations of regulations which related definitely to the question of qualification.

For example, noncompliance caused not to be revealed the applicant's interests in other leases through stockholdings in a corporation, and, also, caused not to be revealed the fact that in substance the applicant was through other connections applying for the same lease, thus having more than one chance to acquire the lease, which was inconsistent with long established standards for the fair treatment of all applicants.[11] For these and other reasons, as enlarged upon in the opinion, the applicant was held not qualified. The case has no significant resemblance to the one at bar. As we have seen, the statute requires the lease to be granted to the first person making application "who is qualified." The Secretary did no more than recognize that de Armas was that person.

We think the judgment entered by Judge McGuire for the defendant and intervenor, appellees, should be and it is

Affirmed.

PRETTYMAN, Circuit Judge (dissenting).

The Mineral Leasing Act provided[1] that "the person first making application for the lease who is qualified to hold a lease under this Act shall be entitled" to the lease. It further provided[2] that no person shall hold at one time oil or gas leases under the statute exceeding fifteen thousand three hundred and sixty acres[3] in any one State. The Mineral Leasing Act for Acquired Lands authorized the Secretary of the Interior to prescribe such regulations as are appropriate to carry out the purposes of the Act.[4] The

---

11. The applications in Wahlenmaier were made under a section of the Secretary's regulations which provided for a determination of the "first qualified applicant" by a public drawing. This regulation read:

"Each applicant will be * * * required * * * to furnish a statement that the application is filed solely on his own behalf and not for any other person, association, or corporation. * * * If any applicant fails to comply with the requirements, his application will not be entered in the drawing but will be re-

jected without further notice."
11 Fed.Reg. 12958 (1946), 43 C.F.R. § 192.43 (Supp.1946).

1. 60 Stat. 951 (1946), as amended, 30 U.S. C.A. § 226.

2. 60 Stat. 954 (1946), 62 Stat. 291 (1948), as amended, 30 U.S.C.A. § 184.

3. Increased to forty-six thousand and eighty acres by an act of Aug. 2, 1954, 68 Stat. 648.

4. 61 Stat. 915 (1947), 30 U.S.C.A. § 359.

Secretary promulgated a regulation[5] which provided:

" * * * each application for a lease or permit must contain (1) a separate statement of the applicant's interests, direct and indirect, in leases or permits for similar mineral deposits, or in applications therefor, on federally owned acquired lands in the same State, identifying by serial number the records where such interests may be found * * *."

Appellee de Armas filed an application on April 2, 1951, which did not conform to the foregoing regulation; it did not list his specific leaseholdings or their serial numbers. The regulation was mandatory and unqualified; it said "must contain". No action was taken on that application. More than three years later, on August 17, 1954, appellant McKenna filed an application for the same lease, and his application fully complied with the regulation. Thereafter the Secretary permitted de Armas to amend his application *nunc pro tunc* so as to supply the required information omitted from his original application. The Secretary then awarded the lease to de Armas.

Appellant McKenna was the first person to file an application in accordance with the regulation and was therefore the first qualified applicant for the lease. The Secretary was in violation of the Act when he awarded the lease to de Armas, who was not the first applicant to qualify under the regulation.

It is my view that the Secretary was bound by his own regulation and had no power to depart from its requirements. Such is the plain holding of the Accardi case,[6] in which the Supreme Court held that, when the Attorney General by regulation established a Board of Immigration Appeals, requiring it to exercise its judgment in the consideration of appeals in deportation matters, he himself was bound by the regulation and could not dictate the Board's decision or announce his intention in respect to a case before the Board had decided it. My position is also supported by the ruling of the Supreme Court in Service v. Dulles.[7] The Court there held the discharge of Service to be invalid, on the ground that the discharge violated the regulations of the Department of State, which were binding on the Secretary. In Chapman v. Sheridan-Wyoming Co.[8] the Court, speaking of a regulation under the Mineral Leasing Act, said: "That it binds him [the Secretary] as well as others while it is in effect is not doubted."[9] We considered a somewhat similar problem under this Act in McKay v. Wahlenmaier[10] and decided it in accordance with the view which I here indicate.

The Secretary attempts to justify his departure from his outstanding regulation by saying (a) that the Bureau of Land Management, a subordinate bureau in his Department, had, unknown to him, as a matter of administrative practice ignored the outstanding regulation and (b) that equitable considerations which seem to him fair, reasonable and rational require that an applicant deficient under the regulation should be given time to supply details necessary to cure the de-

5. 43 C.F.R. § 200.5 (1949 ed.)

6. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

7. 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

8. 338 U.S. 621, 629, 70 S.Ct. 392, 94 L.Ed. 393 (1950).

9. See also Columbia Broadcasting System v. United States, 316 U.S. 407, 422, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942), where the Court said: " When, as here, the regulations are avowedly adopted in the exercise of that power, couched in terms of command and accompanied by an announcement of the Commission that the policy is one 'which we will follow in exercising our licensing power,' they must be taken by those entitled to rely upon them as what they purport to be—an exercise of the delegated legislative power—which, until amended, are controlling alike upon the Commission and all others whose rights may be affected by the Commission's execution of them."

10. 96 U.S.App.D.C. 313, 226 F.2d 35 (1955).

fect and to have such amendment retroactive in date. The Assistant Secretary of the Interior who authorized the *nunc pro tunc* amendment of defective applications said regarding the Bureau's practice, "Although the practice is not legally justifiable, and acquired land lease applications which do not contain the statement required by 43 CFR 200.5 are defective," permission to amend should be given.

In my view equitable considerations do not constitute a valid ground for violation of a valid mandatory regulation. No such exception is indicated in Accardi or in Service. Fair, reasonable and rational considerations apply to discretion absent a regulation; they cannot supersede an unequivocal regulation validly prescribing the terms of a valid application. Particularly, it seems to me, is no such exception permitted where the circumstance which gives rise to the equitable considerations is a practice admittedly not legally justifiable. Moreover, if the ruling is fair, reasonable and rational as to de Armas, what about McKenna? Is the Secretary to choose, in the face of the regulation, the person in whose favor he is to be fair, reasonable and rational? In administrative law are we to return to the "Chancellor's breakfast" theory?

Of course there was a margin of time when amendment might have been granted de Armas by administrative courtesy. By the regulation then in force his application could have been amended and would then have taken the date of the amendment. But that time for effective correction of the defective document expired when McKenna filed his application. The vice in the present ruling is not that it permits amendment but that it permits *nunc pro tunc* amendment to validate a defective application after rights of another applicant have intervened. The

court penalizes the careful, complying applicant and rewards the careless or non-complying. I think the Congress never intended to grant the Secretary (or his numerous administrative aides) such powers as are inherent in this rule of a fair, reasonable and rational choice of the successful applicant for an oil or gas lease.

It seems to me that the view now taken by the court destroys one of the fundamental principles of administrative rule-making, that is, that Government officers and citizens alike are bound by the terms of a regulation validly adopted and outstanding. These regulations are available to the public, made known by a process prescribed by statute to those who deal with the Government. The rulings of the Supreme Court on the matter are explicit and unmistakable. Chaos in the administrative law field will result from the practice established in the present case. Everybody will have the right to claim the benefits of the practice. Nobody will be able to abide a validly adopted regulation with certainty. Surely confusion will be among the least of the undesirable results.

The basic problem is the "rule of law". We have laws—either statutes or rules legally adopted,—and we are supposed to be governed by them. If our governors merely do whatever strikes them as just and fair and reasonable at the moment, we have rule by men instead of by law. These are not cliches. Rule by law alone is the precise essential which differentiates our system from the totalitarian system. If the Secretary of the Interior, despite statutes and duly adopted rules, can award this lease to de Armas, he can award any oil and gas lease according to what he at the moment deems to be fair and just and reasonable. Not law but the will of the Secretary will then govern in respect to the beneficiaries of these great items of national wealth.