EL DORA OIL CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. December 4, 1915.)

No. 2660.

1. APPEAL AND ERROR ⬦⟼185—JURISDICTION—EQUITY—WAIVER OF OBJECTION.
   A defendant, by failing to raise objection to jurisdiction in equity in the trial court, waives the same, and cannot raise it on appeal.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166–1176, 1375; Dec. Dig. ⬦⟼185.]

2. WASTE ⬦⟼17—JURISDICTION—SUIT TO RESTRAIN WASTE.
   Equity has jurisdiction of a suit, the essential and primary purpose of which is to restrain waste which, if continued, would work irreparable injury to the property in controversy, although the defendant may be in possession.
   [Ed. Note.—For other cases, see Waste, Cent. Dig. §§ 38–42; Dec. Dig. ⬦⟼17.]

3. MINES AND MINERALS ⬦⟼2—RIGHT OF GOVERNMENT—SUIT TO RESTRAIN WASTE—JURISDICTION OF EQUITY.
   A court of equity has jurisdiction of a suit by the United States to enjoin the taking of petroleum from land which complainant claims to own and which constitutes its chief value, and where complainant also owns adjoining oil lands.
   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 2; Dec. Dig. ⬦⟼2.]

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Maurice T. Dooling, Judge.

Suit in equity by the United States against the El Dora Oil Company, J. L. Campbell, H. M. Jackson, and John Shrader, doing business under the firm name of the Ohio Valley Construction Company, and John Shrader and T. J. Green. From an order granting a preliminary injunction, defendants appeal. Affirmed.

The United States, the appellee herein, was the plaintiff in a suit in the court below, the purpose of which was to stay waste of oil on a certain quarter section of government land, to obtain an accounting for oil theretofore removed from said land, to enjoin further waste, and for the protection of said property to secure the appointment of a receiver, and to obtain a decree that the title to said property is in the United States. The complaint alleged that the value of the land involved was $1,000,000; that on September 14, 1908, the land was withdrawn by the Secretary of the Interior from settlement, entry, and purchase under the nonmineral land laws of the United States; that on June 9, 1909, it was duly classified by the Secretary of the Interior as oil-bearing mineral land; that on September 27, 1909, the President, acting by and through the Secretary of the Interior, and under the authority legally vested in him, duly withdrew and reserved said land, together with other contiguous public land, from mineral exploration, and from

⬦⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

all forms of location, settlement, selection, filing, entry, or disposal under any of the public land laws of the United States; that since said date said land has not been subject to exploration for minerals, or to the initiation of any right under any of the public land laws of the United States; that on July 2, 1910, the President, acting under the authority legally vested in him, and especially by virtue of the provisions of the act of Congress of June 25, 1910, entitled "An act to authorize the President of the United States to make withdrawal of public lands in certain cases," duly ratified, affirmed, and continued in force and effect the order of withdrawal of September 27, 1909, and further withdrew and reserved said land from all forms of location, settlement, selection, filing, entry, or disposal under the mineral or nonmineral land laws of the United States, subject only to the provisions of said act of Congress; that subsequent to January 1, 1910, the defendants entered upon the said land and pretended to acquire and assert mineral rights therein, and have from time to time and are now committing trespass and waste thereon; that the defendant the Midway Oil Company wrongfully and unlawfully entered on the land, and thereafter drilled and caused to be drilled an oil well, and extracted from the land and appropriated to its use a large quantity of petroleum and gas; that subsequent to July 4, 1910, the defendant El Dora Oil Company and other defendants entered on said land and thereafter drilled oil wells and extracted from the land and appropriated to their use large quantities of petroleum and gas. Similar allegations are made as to other defendants, and the complaint alleged that the defendants, in disregard of the withdrawal of September 27, 1909, attempted to make mining locations on said land, but that no work of exploration or development for the discovery of petroleum, mineral oil, or gas, or other mineral, was ever commenced or prosecuted by any of the defendants on said land prior to July 4, 1910, and that no discovery of any minerals was made by any of the defendants on said land prior to October 10, 1910. The bill further alleged that, unless restrained therefrom, the defendants will continue to hold possession of the land and will drill oil wells thereupon, and extract petroleum or mineral oil and gas therefrom, and otherwise commit trespass and waste thereupon, to the great and irreparable injury of the plaintiff.

The defendants moved to dismiss the complaint for insufficiency of facts to constitute a cause of action in equity against them, and on the ground that the withdrawal of the land on September 27, 1909, was unconstitutional and void, and of no force and effect, and that no withdrawal of mineral in said land had been made. The motion was overruled, a receiver was appointed to take possession of the property, and the defendants were enjoined from removing oil or gas from the land, and from further producing oil from said land pending the suit. From that order the defendants have appealed, and among other assignments of error they assign that the court below erred in making the order in this: That the court had no jurisdiction to make the same. It is upon that assignment alone that the defendants rely in presenting their case upon the appeal.

George E. Whitaker and E. L. Foster, both of Bakersfield, Cal., and A. L. Weil, of San Francisco, Cal., for appellants.

T. W. Gregory, Atty. Gen., and E. J. Justice, Special Asst. Atty. Gen., for the United States.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that upon the facts shown on the face of the bill the plaintiff has an adequate remedy at law in ejectment, and it is also urged that where, as here, a bill alleges that the defendant is in possession, equity has no jurisdiction of an action to recover possession, or to remove a cloud, or to quiet title, even though other relief be asked.

[1, 2] As to the suggestion that there is an adequate remedy at law, it is to be said that the defendants failed in the court below, by motion, plea, or otherwise, to raise that objection to the jurisdiction in equity, and therefore they have waived the same. Southern Pac. R. Co. v. United States, 133 Fed. 651, 66 C. C. A. 581; McCloskey v. Pacific Coast Co., 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673. But, even if timely objection had been made on that ground, we are of the opinion that the court below had jurisdiction of the suit, for the reason that the essential and primary purpose of the same is to restrain waste, which, if continued, will work irreparable injury to the property in controversy. Said the court in Wood v. Braxton (C. C.) 54 Fed. 1005:

"The jurisdiction of courts of equity by way of injunction to restrain waste, to prevent the cutting of timber, and the mining of minerals, is one of comparatively recent origin; but it is now fully recognized and well established in this country, as well as in England. * * * If the nature of the injury complained of goes to the substance of the estate, thereby producing irreparable mischief, equity will interfere in limine, and not require the party to resort to an action at law, and this independent of the question of the insolvency of the defendant."

In Peck v. Ayers & Lord Tie Co., 116 Fed. 273, 53 C. C. A. 551, a case in which neither party to the suit was in possession of the land in controversy at the time of the commencement of the suit, the Circuit Court of Appeals for the Sixth Circuit, while it was of the opinion that the jurisdiction of the Circuit Court could not have been sustained upon the bill regarded solely as one for quieting title, said:

"But we think the bill could be properly entertained as one for restraining the waste and destruction of property, and incidentally for an accounting for waste already committed. For such a purpose it is not necessary that the plaintiff should be in possession. Indeed, the jurisdiction was originally exercised in cases where the defendant was in possession as tenant for years, as trustee, or as owner of a life or other limited estate. Story, Eq. Jur. §§ 915–918. And, having obtained jurisdiction for that purpose, we think the court might, for the purpose of preventing a multiplicity of suits, retain it for further relief by settling the question of title—a question deeply involved in the determination of the controversy over the right to an injunction to stay waste, and requiring similar proofs."

That ruling was followed by the same court in Douglas Co. v. Tennessee Lumber Mfg. Co., 118 Fed. 438, 55 C. C. A. 254.

In Big Six Development Co. v. Mitchell, 138 Fed. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332, a case in which the defendant was in possession of mining property which the complainant claimed to own, the Circuit Court of Appeals for the Eighth Circuit said:

"The trespass here complained of, as disclosed by the record, is not an ordinary case of trespass upon lands, of temporary duration, but, as we think the evidence shows, was a continuous trespass, which threatened to destroy the character of the property as a mine, and would render the plaintiff's interest therein valueless. * * * In such cases the threatened injuries are to the res, and diminish the value of the property itself, and an injunction will be granted to prevent the continuing waste or continuing trespass, although the plaintiff is not in possession, and although the legal title has not been settled or questioned by an action at law. * * * If the only relief sought by the bill in this case was to remove the cloud upon plaintiff's title, it may well be doubted whether the bill could be sustained. * * * But the bill

goes further, and seeks to enjoin the defendant from committing waste and destroying the property as a mining property. In such a case jurisdiction in equity attaches, even where the plaintiff is not in possession; and, having obtained jurisdiction for that purpose, the court may, for the purpose of preventing a multiplicity of suits, retain it for further relief, and may remove a cloud upon the title, quiet the title, and determine the right of possession."

The decision in that case was followed in United States v. Mackey (D. C.) 214 Fed. 137–141, a case very similar in its facts to the case at bar. See, also, Bettes v. Brower (D. C.) 184 Fed. 342, Graves v. Ashburn, 215 U. S. 331, 30 Sup. Ct. 108, 54 L. Ed. 217, and Archer v. Greenville Gravel Co., 233 U. S. 60, 34 Sup. Ct. 567, 58 L. Ed. 850.

[3] From the allegations of the bill it is apparent that the whole value of the land in controversy consists in the oil and gas beneath its surface, and that the situation with reference thereto is the same as that described in the opinion in United States v. Midwest Oil Co., 236 U. S. 459–466, 35 Sup. Ct. 309, 310 (59 L. Ed. 673), where it was said:

"Large areas in California were explored; and, petroleum having been found, locations were made, not only by the discoverer, but by others on adjoining land. And, as the flow through the well on one lot might exhaust the oil under the adjacent land, the interest of each operator was to extract the oil as soon as possible, so as to share what would otherwise be taken by the owners of nearby wells. The result was that oil was so rapidly extracted that on September 17, 1909, the Director of the Geological Survey made a report to the Secretary of the Interior which, with inclosures, called attention to the fact that, while there was a limited supply of coal on the Pacific Coast, and the value of oil as a fuel had been fully demonstrated, yet at the rate at which oil lands in California were being patented by private parties it would 'be impossible for the people of the United States to continue ownership of oil lands for more than a few months. After that the government will be obliged to repurchase the very oil that it has practically given away.'"

It is also evident that, to remedy the wrongs described in the bill, no legal action is adequate. The injury to the plaintiff's estate consists, not only in the past and threatened extraction of petroleum from the ground in controversy, but in probable injury to or destruction of the sources of supply of oil in that and adjacent lands owned by the plaintiff. In 22 Cyc. 771, it is said:

"To defeat the equitable jurisdiction, however, it is not sufficient that the law should merely afford some remedy; that remedy must be as practical and efficient as is the equitable remedy in rendering justice, and as prompt in its administration. An injunction is in many cases more prompt and efficient than any legal remedy, and because of this promptness and efficiency there is a strong tendency to grant injunctions in cases where formerly the remedy at law would have been deemed fully adequate."

The order is affirmed.

ROSS, Circuit Judge. I agree that the court below was not without jurisdiction to stay waste upon the property described in the bill, of which it alleges the government is, and was at the times therein mentioned, the owner, and for the protection of the substance of the property to appoint a receiver to take and hold possession under the orders of the court pending the litigation; but since no issue has been raised by the defendants, or either of them, there is manifestly nothing in the case so far for trial. Therefore, I do not think we should de-

cide or consider whether the defendants would or would not be entitled to a jury trial, should an issue of title be subsequently presented.

For the reason stated, I concur in the affirmance of the order appealed from.

RUDKIN, District Judge. It was conceded on the argument that the appellee is entitled to equitable relief in some form and to some extent on the case made by the bill, and in my opinion the court committed no error in granting the temporary order from which this appeal is prosecuted. As said by the court in Oolagah Coal Co. v. McCaleb, 68 Fed. 86, 88, 15 C. C. A. 270:

"The chief ground on which the defendants below, who are the appellees here, seek to sustain the action of the trial court in sustaining the demurrer and in dismissing the bill, is that the plaintiff company had a plain, adequate, and complete remedy at law. This view, however, overlooks the important fact disclosed by the record that the injury complained of by the plaintiff company was not an ordinary trespass upon lands, of temporary duration, but was a continuous trespass, which threatened to destroy the character of the property as a mine, and to render the plaintiff's interest therein utterly valueless. It also overlooks the fact that the bill charged, in substance, that whatever colorable right the defendants had to mine coal on the lands in controversy was derived under a license that had either been issued by mistake, or had been obtained by one of the defendants through fraud. It is now well settled by many adjudications, beginning with the case of Mitchell v. Dors, 6 Ves. 147, that an injunction may be granted to restrain a trespasser from entering into a mine and removing the minerals therefrom. Trespasses of that kind, as well as those which consist in cutting down and removing timber, or in removing buildings or other improvements of a permanent character, standing upon lands, are readily enjoined, because, as has sometimes been said, such acts alter the character of the property, and also tend to destroy it, and to occasion irreparable loss and damage. * * * It is also held that, even when the title to the property on which the trespass is committed is in dispute, a court of equity will at least award a temporary injunction against the commission of such acts as tend to permanently alter its character or destroy its value, until the title thereto is determined in an appropriate proceeding inaugurated for that purpose. * * * We fail to see, therefore, that the plaintiff company was without right to equitable relief, even if it be true, as the defendants contend, that the bill discloses a controversy between the parties as to who has the superior right to mine coal on the lands in question, which can only be appropriately determined by a court of law. If such was the fact, it would nevertheless be competent for a court of equity to restrain the commission of such trespasses as are charged in the bill, which tend to render the property valueless for mining purposes, until the controversy existing between the parties is settled by the proper tribunal."

Should the court below on the final hearing simply continue the present order in force and conserve the property until the title can be determined in an appropriate proceeding inaugurated for that purpose, the appellants will have no ground of complaint. If, on the other hand, the court undertakes to determine questions of title or right of possession, the ruling will be subject to review on an appeal from the final decree. The question of jurisdiction was not raised by the motion to dismiss, and in the absence of an answer the issues to be tried are undetermined. The court has not as yet denied the defendants a jury trial, and has never ruled upon that question. It has committed no error as far as it has gone, and to map out its future course is no part

of the duty of an appellate tribunal. The question discussed at the bar is a moot one, not presented by the record, and as said by the Court of Appeals of New York in Re Manning, 139 N. Y. 446, 34 N. E. 931:

"The demands of actual practical litigation are too pressing to permit the examination or discussion of academic questions, such as this case in its present situation presents."

It may be that the owner in possession of mineral land or timber land forfeits his constitutional right to a trial by jury at the suit of an adverse claimant by making a legitimate use of the property in his possession; but I am unwilling to so declare until the question comes properly before us, especially in view of the fact that other parties not now before the court are vitally interested in a decision of that question.

For the reasons thus briefly stated, I concur in the judgment of affirmance.