UNITED STATES v. DEVIL'S DEN CONSOL. OIL CO.

SAME v. LOST HILLS MINING CO. (two cases).

(District Court, S. D. California.   October 4, 1916.)

Nos. A–37, A–52, A–57.

**1.** MINES AND MINERALS ⬬⟿38(2)—MINING CLAIMS—SUIT BY UNITED STATES TO CANCEL CLAIM.

The mere acceptance by the Land Office of an application for a patent to a mining claim in due form from a private individual, and the payment by the latter of the purchase money after the required notice has been given, is not a bar, during the pendency of the matter in the Land Department, to a suit by the government to cancel and annul the interest of the applicant, if any, and determine his right to possession, and to extract and market the mineral, on the ground that the application and proceedings are fraudulent and unlawful.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 87½; Dec. Dig. ⬬⟿38(2).]

**2.** MINES AND MINERALS ⬬⟿38(2)—MINING CLAIMS—SUIT BY UNITED STATES TO CANCEL CLAIM.

Proceedings to obtain a patent for mineral land are ex parte as to the government, and while the Land Department is vested with exclusive jurisdiction to determine the rights of adverse claimants, and until it has exhausted its jurisdiction by the issuance of a patent a court will not assume which of two rival claimants is entitled to the property, the government is not precluded from maintaining a suit at any time to determine the rights of a claimant in possession, and to protect the property from waste and spoliation pending such determination.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 87½; Dec. Dig. ⬬⟿38(2).]

**3.** MINES AND MINERALS ⬬⟿38(7)—MINING CLAIMS—SUIT BY UNITED STATES FOR CANCELLATION—RECEIVER.

On a bill by the United States, alleging that defendants are in possession of public mineral lands, claiming under entries which are fraudulent and unlawful, and are extracting and selling oil therefrom, the court may properly, on a substantial showing of such facts, appoint a receiver for the property pending final determination of the suit.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 91; Dec. Dig. ⬬⟿38(7).]

In Equity.   Suits by the United States against the Devil's Den Consolidated Oil Company, and against the Lost Hills Mining Company. On motions for preliminary injunctions and receivers.   Motions for receivers granted.

Frank Hall and E. J. Justice, Sp. Asst. Attys. Gen., for the United States.

Joseph D. Redding, Edmund Tauszky, Peter F. Dunne, and Earl H. Pier, all of San Francisco, Cal., for defendants.

BEAN, District Judge.   These suits are brought by the government for decrees that the several tracts of land described in the bills, amounting in the aggregate to about 2½ sections, together with their mineral contents, are the property of the United States, free from any claims of the defendants, or any of them, and restraining the de-

fendants from trespassing thereon, or extracting the oil therefrom, and for an accounting. The legal title to the property involved is in the United States, and except one-half section is included in the Presidential withdrawal order of September 27, 1909. The land is chiefly valuable for its oil contents, and the larger area thereof is now and has been for some time operated by the defendants as oil-producing property, and large quantities of oil have been and are now being extracted therefrom.

No discovery of oil on any of the lands had been made at the date of the withdrawal order referred to, nor was any one in possession of any part thereof at that time actually engaged in drilling or prospecting for oil. In the spring of 1907, however, divers parties entered upon the lands in controversy and a large number of other tracts in the same vicinity, and posted thereon and caused to be recorded in the county in which the land is situated notices claiming the same under the placer mining laws of the United States, and subseqently conveyed their interests to the defendants. Thereafter, and during the year 1911, the defendants in cases A–37 and A–52 each filed in the local land office at Visalia an application for a patent under sections 2325 and 2326, Revised Statutes (Comp. St. 1913, §§ 4622, 4623), alleging in substance that their predecessors had entered upon the land in February, 1907, and, having theretofore discovered thereon gypsum and other placer minerals, did then and there locate the same as consolidated placer mining claims, by marking the boundaries on the ground and posting and recording the required notices; that ever since said time the applicant and its predecessors in interest have been in actual bona fide possession of the property, working and holding the same as a placer mining claim, and have done the necessary amount of assessment work. The application was accompanied by divers and sundry affidavits and papers in support thereof, all requirements of the statutes and the rules and regulations of the Land Department in the matter of an application for a patent for a mining claim being complied with. After the 60 days' publication had expired, no adverse claim having in the meantime been filed or made by any private party, the applicant paid to the receiver of the local land office the purchase price, and such receiver issued and delivered his receipt therefor, stating that the money was received in connection with such application, and a recital that it "is evidence only of the receipt of the money included without regard to the subsequent allowance or rejection of the application, due notice of which will be given." The application and accompanying documents together with a copy of the receiver's receipt was immediately forwarded to the Commissioner of the General Land Office by the register of the local land office.

No further action was taken in the matter until December, 1915, when, by direction of the Commissioner of the General Land Office, a special agent of the department filed charges against the validity of the entry on the ground: (1) That no discovery of oil or gas had been made at the time the land was withdrawn from entry. (2) That neither the applicants nor their predecessors in interest were in the actual bona

fide possession of the property and prosecuting work looking to discovery at the date of such withdrawal. (3) That no valid discovery of gypsum had been made on the property prior to the withdrawal ordered, and that the claim that the land contained valuable deposits of gypsum is and was a mere pretense and not made in good faith, with the bona fide intention of developing and marketing the gypsum, but as a mere subterfuge for obtaining title to the land on account of its oil contents. (4) That the location of the land involved in suit A–37 was not made by the so-called locators in good faith for their own use and benefit, but for the use and benefit of the defendant, the Devil's Den Consolidated Company, and with the purpose and intention of it securing thereby a greater area of mineral land than may be lawfully entered in a single location by a corporation. The defendants were duly notified of such charges, and filed denials thereof, and requested that a hearing be ordered thereon. Thereafter these suits were commenced, based upon substantially the same grounds as the charges filed against the entries in the local land office.

[1] The defendants plead the pendency of the proceedings before the land office in bar, the contention being that the acceptance by the officers of the local land office of defendants' application for a patent and the purchase price of the land was in effect a judgment in rem and vested the equitable title to the land in the defendants, subject only to the appellate jurisdiction of the Land Department, and until such judgment is annulled by the proper authorities within the Land Department the defendants are entitled to the possession of the property, with the right to extract and dispose of the minerals thereof.

In a contest between private parties over the title or right to the possession of mining property for which patent has not been issued, the doctrine invoked would no doubt be applicable. Where the necessary steps are taken by a qualified applicant to obtain a patent to mining land, and no adverse claim has been filed, the applicant becomes vested with the equitable title and a prima facie right to a patent immediately upon the payment of the purchase price, and the delay of the department in issuing patent "does not diminish the rights flowing from the purchase, or cast any additional burdens on the purchaser, or expose him to the assaults of third parties." Benson M. Co. v. Alta M. Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762; El Paso Brick Co. v. McKnight, 233 U. S. 250, 34 Sup. Ct. 498, 58 L. Ed. 943, L. R. A. 1915A, 1113. But such a proceeding does not divest the government of its title, nor is it an adjudication as between the claimant and the government. In such a case there is no adjudication by the Land Department of any questions arising on the application for patent. Nor has it been allowed or approved by the government or any of its officers, and no final certificate has been issued. But if the application had been allowed and passed to patent, it would not have been conclusive against the government. Wash. Securities Co. v. United States, 234 U. S. 76, 34 Sup. Ct. 725, 58 L. Ed. 1220. All that has been done in the instant cases is the receipt by the officers of the local land office of the application for patent and the purchase price, the trans-

mission by them of the same to the General Land Office, and a subsequent filing of objections to the issuance of patent by an agent of the department. The broad question, then, is whether the mere acceptance by the land office of an application for a patent to a mining claim in due form from a private individual, and the payment by the latter of the purchase money after the required notice has been given, is a bar during the pendency thereof in the Land Department to a suit by the government to cancel and annul the interest of the applicant, if any, and determine his right to possession, and to extract and market the mineral, on the ground that the application for patent and the proceedings connected therewith were and are fraudulent, wrongful, and unlawful.

In my judgment it is not. The proceedings are wholly ex parte as to the government, and can have no greater effect than if the patent had actually issued; and it is settled law that the issuance of a patent under such circumstances is not a bar to a suit by the government to vacate or annul such patent, if fraudulently and unlawfully obtained, or issued by mistake or inadvertence of the officers of the Land Office. Hughes v. United States, 4 Wall. 232, 18 L. Ed. 303; Germania Iron Co. v. United States, 165 U. S. 379, 17 Sup. Ct. 337, 41 L. Ed. 754; Washington Securities Co. v. United States, 234 U. S. 76, 34 Sup. Ct. 725, 58 L. Ed. 1220; Linn & Lane Timber Co. v. United States, 236 U. S. 574, 35 Sup. Ct. 440, 59 L. Ed. 725. I do not think any greater virtue should be accorded to a mere ex parte preliminary proceeding.

[2] It is insisted, however, that as the applications for patents are now pending and undetermined in the Land Department, the court will not assume jurisdiction, even if such applications are fraudulent and unlawful, until they are finally disposed of by the department. The Land Department is vested, conformably to the acts of Congress, with the exclusive jurisdiction to determine the rights of claimants to public lands, and until it has exhausted its jurisdiction by the issuance of a patent a court will not assume to determine which of two rival claimants is entitled to the property. Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800. But the government is not an adverse party to a proceeding to acquire title to its property, nor is the Land Department a tribunal to which it must submit its rights, or litigate with one who has taken possession of its property or has attempted to acquire title thereto. The notice required by statute of an application for patent to a mining claim is designed and intended to cut off the rights of private claimants, and not the government of the United States. It is given in order that all persons having adverse claims may be heard in opposition to the issuance of the patent. But (section 2325, R. S.) "if no adverse claim shall have been filed it shall be presumed that no adverse claim exists, and thereafter no objection from third persons to the issuance of patent shall be heard except it be determined that the applicant has failed to comply with the terms of this chapter." If, however, an adverse claim is filed during the period of publication, the adverse claimant is

required by section 2326 to commence within 30 days thereafter proceedings in a court of competent jurisdiction to determine the same, thus clearly showing that the purpose of the statute is to make the proceeding binding on private parties and not the government.

There is no reason to be found in the relation of the government to such a proceeding which will deprive it of the same right to relief if the proceedings are fraudulent or unlawful as an individual would have in regard to his own contract procured under similar circumstances. Indeed, there are reasons why it should not be denied the right to invoke the aid of a court by the mere receipt and acceptance of an application for a patent and the purchase price by an officer of the local land office; for, as said by Mr. Justice Miller in United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110:

"In nine cases out of ten, perhaps in a much larger percentage, the proceedings are wholly ex parte. In the absence of any contesting claimant for a right to purchase or secure the land, the party applying has it all his own way. He makes his own statement, sworn to before those officers, and he produces affidavits. If these affidavits meet the requirements of the law, the claimant succeeds, and what is required is so well known that it is reduced to a formula. It is not possible for the officers of the government, except in a few rare instances, to know anything of the truth or falsehood of these statements. In the cases where there is no contesting claimant, there is no adversary proceeding whatever. The United States is passive; it opposes no resistance to the establishment of the claim, and makes no issue on the statement of the claimant. When, therefore, he succeeds by misrepresentation, by fraudulent practices, aided by perjury, there would seem to be more reason why the United States, as the owner of land of which it has been defrauded by these means, should have remedy against that fraud—all the remedy which the courts can give—than in the case of a private owner of a few acres of land on whom a like fraud has been practiced."

I am of the opinion therefore that the court has jurisdiction to try the questions involved in these cases. If, however, I am mistaken as to the extent of the jurisdiction, the government is clearly entitled, upon the allegations of the bill and the showing made, to invoke the aid of a court of equity to protect the property from waste and destruction pending the final determination of its rights therein in the Land Department out of the court. Nor. Lumber v. O'Brien (C. C.) 124 Fed. 819; El Dora Oil Co. v. United States, 229 Fed. 946, 144 C. C. A. 228. Even where land has ceased to be public land by pre-emption, homestead, and like claims, but to which claimant has not perfected his title, they are still so far public lands of the United States that the government may protect them from waste. Shiver v. United States, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231.

The Land Department has no general equitable power. It cannot grant injunctions, appoint receivers, nor by its orders or decrees prevent trespass upon or protect the public domain from spoliation. It is true under the act of Congress of August 25, 1914, the Secretary of the Interior is authorized in his discretion to enter into agreements with a certain class of applicants for patents for oil and gas lands included within an order of withdrawal, relative to the disposition of oil or gas produced therefrom. This is a discretionary power, probably intended for the benefit and to protect from liability as trespassers those who, in

the judgment of the Secretary, have mistakenly trespassed upon land not open to entry and in good faith expended money in prospecting for oil and in the development and the improvement of the property. In one of the cases now under consideration an application for such a contract has been made, and denied by the Secretary on the ground and for the reason that suit was then pending in this court. His reasons for refusing to enter into the contract are not the subject of review here. It is enough that no such contract has been made.

[3] The remaining question is whether the motion for an injunction and the appointment of a receiver should be allowed. No discovery of oil had been made on any of the property at the time of the withdrawal order of September 27, 1909, and as there can be no location of a mining claim valid as against the government until the discovery of mineral within the limits of the claim (sections 2320 and 2329, R. S. [Comp. St. 1913, §§ 4615, 4628]), it follows that the defendants have no right or claim to the property included in such order which they can assert against the government, unless it shall appear that valid locations were made prior thereto on account of the gypsum contents, or the defendants or their predecessors in interest were at the date thereof bona fide occupants and in diligent prosecution of work leading to the discovery, within the meaning of the saving clause of the act of June 25, 1910.

The government claims and alleges that the land does not contain gypsum of any substantial value, and that it was sought to be located solely for its oil contents; that the alleged discovery of gypsum is a mere subterfuge, designed to avoid the effect of the withdrawal order; and that the alleged location of the property involved in suit A–37 was made by the so-called locators for the use and benefit of the defendant company, and not for themselves. On this preliminary hearing it is not necessary that the court express its opinion upon these questions. Indeed, it would be improper for it to do so, except to say that the showing made indicates very clearly that there is substantial ground for the government's position.

The defendants, however, are in possession and actually engaged in extracting and threatening to extract large quantities of oil, thus destroying the very substance of the estate. They are disposing of the oil at much less than its current market value. Their holdings consist principally of the property in controversy, and it is not probable that they would be able to respond in damages if they lose the property. Moreover, it is shown that the marketing companies will not purchase oil from the disputed land without the consent of the government, because of these suits. Under these circumstances, it appears to me that either an injunction should issue to prevent further operations pendente lite, or a receiver should be appointed, with authority to operate or cause the property to be operated. An injunction would probably result in serious damage to, if not the substantial destruction of, the property by the infiltration of water and otherwise, and would be of much greater injury to the defendants, if the property should ultimately be awarded to them, than the appointment of a receiver.

I am of the opinion, therefore, that a receiver should be appointed for the property in controversy, except the southern half of section 22.

The complaint alleges that this latter tract was within the withdrawal order of September 27, 1909, but the proof shows this to be an error. A part thereof has already passed to patent, and the remainder is described in the withdrawal order of October 5, 1910; but there is no allegation in the bill that oil had not been discovered thereon prior to that time. In fact, the inference is to the contrary, as the bill, impliedly at least, admits the discovery of oil in July, 1910. The defendants, however, acting under the advice, no doubt, of learned counsel, have in good faith—at least, with no apparent intention of defrauding the government—expended large sums of money in improving and developing the property, and I am not satisfied that they are not now operating it economically and carefully. The receiver, therefore, to be hereafter appointed, should permit the defendants to continue the operation under his supervision, and should make no change in the present status or operation of the property without the consent of the defendants, unless by order of the court made after notice to the defendants, other than such as may be necessary to enable him to ascertain the present condition of the property, and receive the output thereof, and to keep a record and accounting thereof.

Decrees may be prepared accordingly.