UNITED STATES v. RECORD OIL CO. et al. SAME v. CONSOLIDATED MUTUAL OIL CO. et al. SAME v. CARIBOU OIL MINING CO. et al.

(District Court, S. D. California. June 8, 1917.)

Nos. A 41, 42, 43.

1. MINES AND MINERALS ⬤⟿38(2)—SUITS TO ESTABLISH RIGHTS IN OIL LANDS.
Where a final certificate has been issued to a claimant of oil lands, and the matter is pending in the General Land Office on application for a patent, the final certificate and proceedings in the Land Office cannot be disregarded, and the same questions pending in such office litigated in a suit by the United States to enjoin the claimant from removing oil and to require an accounting for oil already taken.
[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 87½.]

2. MINES AND MINERALS ⬤⟿39—FINAL CERTIFICATE—EFFECT.
While a final certificate issued to a claimant of oil lands is subject to cancellation by the land department, or to be set aside for fraud by the courts, until canceled, it vests the entryman with an equitable title to the land and the prima facie right to a patent.
[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 114.]

3. MINES AND MINERALS ⬤⟿2—PUBLIC LANDS SUBJECT TO DISPOSITION.
The Pickett Act (Act June 25, 1910, c. 421, 36 Stat. 847 [Comp. St. 1916, §§ 4523–4525]), providing that the rights of any bona fide occupant or claimant of oil lands, who, at the date of a withdrawal of such lands from location, sale, or entry, is in the diligent prosecution of work lead-

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing to the discovery of oil or gas, shall not be affected or impaired by such order so long as he shall continue in diligent prosecution of the work, relieves all land included within its provisions from the operation of the withdrawal order, and leaves it subject to the disposition of the Land Department.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 2.]

Three suits by the United States against the Record Oil Company and others, against the Consolidated Mutual Oil Company and others, and against the Caribou Oil Mining Company and others. Suits dismissed.

Frank Hall, of San Francisco, Cal., for the United States.

Edmund Tauszky, of San Francisco, Cal., for defendant Associated Oil Co.

Oscar Lawler, of Los Angeles, Cal., for defendants McLeod and others.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for defendant Standard Oil Co.

U. T. Clotfelter, of Los Angeles, Cal., and Charles S. Wheeler and A. L. Weil, both of San Francisco, Cal., for defendants Consolidated Mut. Oil Co. and others.

J. Delmore Lederman, of San Francisco, Cal., for defendants Mays Consol. Oil Co. and others.

Jordan & Brann, of San Francisco, Cal., for defendants Columbus Midway Oil Co. and others.

Geo. E. Whitaker, of Bakersfield, Cal., for defendant Wilkes Bros., Inc.

BEAN, District Judge (sitting by special assignment). These three suits were brought to enjoin the defendants from occupying or extracting and removing the oil from the northeast, northwest, and southeast quarters of section 28, township 31, range 23 east of Mt. Diablo meridian, in the state of California, and to require them to account to plaintiff for oil heretofore taken. The cases were tried and submitted together and will be so considered in this memorandum.

The land is chiefly valuable for its petroleum contents. It is within the area withdrawn from all forms of location, entry or disposal by presidential order of September 27, 1909. No discovery of oil had been made on any part of the property at the date of withdrawal, but defendants claim that they or their predecessors in interest were bona fide occupants or claimants thereof at the date of withdrawal, and were then in diligent prosecution of work leading to discovery, which was subsequently made, and are therefore entitled to the property by virtue of the provisions of the act of June, 1910, known as the Pickett Act (36 Stat. 847), and a final certificate issued by the Land Department on a patent application.

The facts, so far as material at this time, are that in June, 1909, H. C. Stratton, claiming as the successor in interest by assignment and transfer of paper locations made by sundry parties on each of the four quarters of section 28, conveyed his interest in the entire section

by quitclaim deed to J. M. McLeod. On June 25, 1909, McLeod leased a portion of each quarter for development purposes to J. M. Mays, acting for the Mays Oil Company, pursuant to the terms of which lease, and in compliance therewith, the Mays Oil Company went into possession of the leased property, and prior to the withdrawal had erected skeleton derricks on each of the three quarter sections involved in these suits, constructed a bunkhouse on the northwest quarter, a cookhouse and water tank on the northeast quarter, laid a water main from the Stratton Works to the tank on the northeast quarter, installed a complete standard drilling rig in the southwest quarter (property not included in this suit), and commenced drilling thereon about August 18, 1909, and continued such work with more or less interruption until the well was brought in. Oil in paying quantities was discovered by them on each quarter now in controversy. Thereafter, and on June 4, 1914, McLeod made application to the local land office for patent therefor, alleging:

"That on and for a long time prior to the 27th day of September, 1909, applicant and his predecessors in interest were, and ever since said date have been, bona fide claimants and occupants of said land, in the diligent prosecution of work leading to a discovery of oil or gas thereon; that the work above mentioned consisted of the drilling of wells upon said land, and upon each quarter section thereof, for the development and production of petroleum or gas therein and therefrom, which work applicant caused to be commenced long prior to September 27, 1909; and that said work consisted in the erection upon said land, and upon each quarter thereof, of a standard oil well drilling derrick, and thereafter actual drilling was begun upon the land herein described, and said work of drilling oil and gas wells upon the lands herein described has been diligently pursued and continued to discovery of oil or gas upon each quarter section of the land herein set forth and described."

Notice of such application was given, as required by law, and after the period of publication had expired, no adverse claim having in the meantime been filed, McLeod applied to purchase the land and paid to the local land office the purchase price, receiving from the register thereof a final certificate, stating that upon the presentation of the same to the Commissioner of the General Land Office, "together with a plat and field notes of survey of said claim and the proofs required by law, a patent shall issue thereon to the said J. M. McLeod, if all be found regular." The application and accompanying papers were immediately forwarded to the General Land Office by the register of the local land office, as required by the rules of the Department, where the matter is now pending.

[1, 2] Thereafter these suits were commenced. No reference is made in the bills to the final certificate, and no charge is contained therein that the same was obtained by fraud or misrepresentation. The suits seemingly proceed on the theory that the final certificate and proceedings in the Land Office can be disregarded, and the same questions now pending in that department be litigated in the courts. I am of the opinion that this cannot be done. The Land Department is charged by law with the sale and disposition of public lands. A final certificate issued by it on an application for a patent vests the entryman with an equitable title to the land and a prima facie right to a

patent. This title is, of course, subject to the jurisdiction of the Land Department, and for proper cause may be canceled by it. It may also be canceled and set aside for fraud by the courts, in a proper suit brought by the government for that purpose (U. S. v. Lost Hills [D. C.] 236 Fed. 973); but until the entry is lawfully canceled the entry-man is in possession under an equitable title and to "be treated as though patent had been delivered" (Dahl v. Raunheim, 132 U. S. 262, 10 Sup. Ct. 74, 33 L. Ed. 324; El Paso Brick Co. v. McKnight, 233 U. S. 257, 34 Sup. Ct. 498, 58 L. Ed. 943, L. R. A. 1915A, 1113).

[3] It is urged, however, that the Land Department had no jurisdiction to receive or entertain an application for patent for land in controversy, or issue a final certificate, because such lands were withdrawn from all forms of entry, by presidential order of September 27, 1909. It is true the land was so withdrawn, but in my judgment the effect of the Pickett Act was a congressional modification of the withdrawal order, by relieving therefrom all land included therein occupied or claimed by bona fide occupants or claimants at the date of the order, who were then in diligent prosecution of work leading to discovery, as far as the rights of such occupants or claimants were concerned. As to them, the matter stood, therefore, as if the land had never been withdrawn, it remaining subject to the disposition of the Land Department.

It is claimed, also, that in any event the plaintiff is entitled to invoke the aid of a court of equity to protect the property from waste and destruction pending final disposition of the patent application by the Land Department. But the bills are not framed on that theory, and contain no allegations upon which such a decree could be based.

It follows, therefore, that the suits should be dismissed; and it is so ordered.