DEVIL'S DEN CONSOL. OIL CO. v. UNITED STATES.

LOST HILLS MINING CO. et al. v. SAME.

(Circuit Court of Appeals, Ninth Circuit. July 1, 1918.)

Nos. 3094–3096.

1. MINES AND MINERALS ⬦⟩38(2)—MINING CLAIMS—SUIT BY UNITED STATES TO CANCEL CLAIM.

The public lands being under the control of the Land Department, including a bureau headed by the Commissioner of the General Land Office, to whom, as a special tribunal with quasi judicial powers, Congress has confided the execution of laws for the sale and disposal of public lands, where a patent for mineral and oil lands has been applied for, and charges of fraud are under investigation, pending action upon the application, the courts are without jurisdiction to determine the rights of claimants in possession as against the United States.

2. MINES AND MINERALS ⬦⟩38(7)—MINING CLAIMS—SUIT BY UNITED STATES FOR CANCELLATION—RECEIVER.

Bill by the United States, alleging that defendants wrongfully entered into and held possession of mineral and oil lands belonging to the United States, setting up fraud in the entry, but failing to show that any proceeding was pending in the land office to determine the right of defendants to the lands, was insufficient to warrant appointment of receiver by the court, pending the determination on the application for patent.

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Robert S. Bean, Judge.

Three suits in equity by the United States against the Devil's Den Consolidated Oil Company, against the Lost Hills Mining Company, and against the Universal Oil Company. From orders granting motions for the appointment of receivers (236 Fed. 973), the defendants appeal. Cases remanded, with directions, and orders affirmed, on condition that amendments be filed; otherwise, reversed, with directions to dismiss the bills.

These cases were heard together in the court below and have been argued and submitted together here. They are, in the main, alike, the real issues being substantially the same; but there are some differences, which will be pointed out. They are cases of great importance, not only by reason of the questions involved, but also because the lands in controversy are oil-producing in large quantities, and hence of great value. That the lands are mineral in character is shown, and it is conceded that the legal title thereto is in the United States, and that the defendants to the respective suits were at the time of their commencement in possession of the lands respectively involved in them, and were at the time extracting oil therefrom. In such circumstances the government instituted the suits, and, among other things, prayed for the appointment of a receiver in each of them, which applications the court below granted, and from which orders the present appeals were taken. The evidence upon which the orders were based has by stipulation of the parties been printed only in the record of case No. 3095. We therefore make reference to that record, as have the respective counsel in their arguments and briefs, noting only the differences that have been referred to.

In its bill in case here numbered 3095 the government alleged that on and before September 27, 1909, the lands involved, to wit, the northwest quarter and the southeast quarter of section 30, and all of section 32, of township 26 south, range 21 east, Mt. Diablo meridian, were parts of the public domain, of which the United States has ever since been the owner and en-

⬦⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

titled to the possession, including all oil, petroleum, gas, and other minerals therein contained; that on the said 27th day of September, 1909, the President, under the authority legally vested in him, withdrew and reserved the said described tracts, together with other lands, from mineral exploration and from all forms of location, occupation, entry, or disposal under any law of the United States; that nevertheless, and in violation of law and of such action of the President, the defendants Lost Hills Mining Company and Universal Oil Company entered upon and took possession of the said specifically described tracts, "long subsequent to the 27th day of September, 1909, but not prior thereto, for the purpose of prospecting and exploring for petroleum and gas therein, and did so prospect and explore long subsequent to the date on which said lands were withdrawn, as hereinbefore mentioned, by said withdrawal order of September 27, 1909."

The bill also alleges that none of the defendants had discovered petroleum, gas, or other minerals in the lands before their withdrawal, and that neither of them, nor any one under whom they claim, was at the date of such withdrawal a bona fide occupant or claimant of any of the land, or in the diligent prosecution of work leading to the discovery of oil or gas therein, and that neither of them, after the dates of their respective alleged entry thereon, "and after beginning the prosecution of the work of drilling for oil and gas, in violation of the order of withdrawal of September 27, 1909, continued in the diligent prosecution of such work till oil or gas was discovered"; that long after the withdrawal of the lands as alleged, "to wit, on the 29th day of July, 1910, and not before that date, as plaintiff is informed and believes," the defendant Lost Hills Mining Company discovered petroleum therein, and since that date it and the defendant Universal Oil Company have drilled numerous wells thereon, and have, in violation of the rights of the complainant, and to its great and irreparable damage, and to the great and irreparable injury to the said described lands and other lands of the government, extracted therefrom large quantities of petroleum and gas, the exact amount and value of which the complainant is unable to state, all of which the defendants have sold and converted to their own use; that the said named defendants are continuing to unlawfully extract such oil and gas, to the irreparable injury of the lands, and that each of them "claims some right, title, or interest to said land, or some part thereof, or in the petroleum or gas extracted therefrom, or in or to the proceeds arising from the sale of such petroleum, or through and by purchase thereof, and each of said claims is predicated upon, or derived directly or mediately from, some pretended notice or notices of mining locations, or otherwise, and by conveyances, contracts, or liens directly or mediately from the persons by whom such pretended locations are claimed to have been made. But none of such location notices and claims is valid against this plaintiff, and no rights have accrued to the defendants or any of them thereunder, either directly or mediately, nor have any minerals been discovered on said land, except as hereinbefore stated; but said claims are asserted to cast a cloud upon the title of the plaintiff herein, and wrongfully interfere with its operation and disposition of said land, to the great and irreparable damage of said plaintiff, and to the great and irreparable injury of said land, and the plaintiff herein is without redress or adequate remedy save by this suit, and this suit is necessary to avoid a multiplicity of actions."

The next allegation of the bill is as follows: "Except as in this bill stated, the plaintiff has no other knowledge or information concerning the nature of any other claims asserted by the defendants herein, or any of them, and therefore leaves said defendants to set forth their respective claims and interests. In that behalf plaintiff alleges, because of the premises of this bill, that none of the defendants has or ever had any right, title, or interest in or to, or any lien upon, said land or any part thereof, or any right, title, or interest in or to the petroleum, mineral oil, or gas deposited therein, or any right to extract petroleum, gas, or other minerals from said land, or to convert or dispose of the petroleum or gas so extracted, or any part thereof; on the contrary, the acts of these defendants who have entered upon said lands and drilled oil and gas wells thereon, and used and appropriated the petroleum deposited therein, and assumed to sell and convey any interest in

or to any part of said lands, or any part of the petroleum extracted therefrom, were all in violation of the laws of the United States and of the aforesaid order of withdrawal, and all of said acts are in violation of the rights of the plaintiff herein, and such acts interfere with the execution by the plaintiff of its public policies with respect to said lands and the petroleum and gas therein as hereinbefore set forth."

After alleging the value of the lands involved in the suit to exceed $1,000,000, the prayer is in substance that the defendants and each of them be required to disclose and state their respective claims; that they and each of them be adjudged to have no estate, right, title, or interest in any of the lands involved, or in the contents thereof, and that all of the said property be decreed to be the property of the complainant, free and clear of any claim on the part of either of the defendants; and that all of them be enjoined from asserting any right, title, interest, claim, or lien on any of the said property, and that each of them, and all of their officers, agents, servants, and attorneys, during the progress of the suit, and thereafter, finally be enjoined from going upon any portion of the said land in controversy, and from in any manner using or extracting therefrom any of its contents, and from in any manner committing any trespass or waste thereon, and for an accounting and for the appointment of a receiver to take possession of all of said specifically described land, and of all wells and other property thereon, "with full power and authority to continue the operations on said land in the production and sale of petroleum and other minerals, where such course is necessary to protect the property of the complainant against injury and waste, and for the preservation, protection, and use of the oil and gas in said land, and the wells, derricks, pumps, tanks, storage vats, pipes, pipe lines, houses, shops, tools, machinery, and appliances being used by the defendants, their officers, agents, or assigns, in the production, transportation, manufacture, or sale of petroleum or other minerals from said land or any part thereof, and that such receiver may have the usual and general powers vested in receivers or courts of chancery."

Subsequently the bill was so amended as to describe the lands involved as the northwest quarter and the southeast quarter of section 30, and the northeast quarter and west half of section 32, all in township 26 south, of range 21 east, Mt. Diablo meridian.

The answer of the defendants, after specifically denying various allegations of the bill, set up as a further and separate defense that on the 13th day of February, 1907, eight specifically named individuals, all of whom it alleged were then citizens of the United States, entered upon and took possession of the northwest quarter of the said section 30, and duly located the same under the laws of the United States relating to placer mining claims, a notice of which location was thereafter duly filed in the office of the recorder of the county in which the land is situated, since which time the said piece of land has been in the actual, peaceable, open, notorious, continuous, exclusive and undisputed possession of the defendant Lost Hills Mining Company and its predecessors in interest, the aforesaid locators, and that during each year since its location more than $100 has been expended in its development, and that during all of the said time the said defendant and its predecessors in interest were in the diligent prosecution of work leading to the discovery of oil thereon, and which actually resulted in the discovery of oil by means of a well drilled at the cost of over $5,000, which produced at least 200 barrels per day; that the said defendant and its predecessors in interest also discovered upon the said land extensive and valuable deposits of gypsum, of good commercial quality, that has been opened up and developed at an expense of over $600, and that prior to and on the date of the order of withdrawal made by the President, and prior to and at the time of the passage of the act of Congress of June 25, 1910, known as the Pickett Act (36 Stat. 847, c. 421 [Comp. St. 1916, §§ 4523-4525]), and ever since and continuously, the said defendant has been and now is a bona fide occupant and in the exclusive possession of the said piece of land under a bona fide claim thereto by virtue of the said location and work and that long prior to the commencement of the suit the said defendant made due application in the proper land office of the United States for

a patent to the said piece of land, pursuant to the provisions of the Revised Statutes, and that after due proceedings had in the land office, as specifically set out in the answer, the said defendant was by the officers of the local land office allowed to purchase the said piece of land, and paid therefor the full price fixed by law therefor, receiving the receipt in duplicate of the receiver, numbered 679,643, and dated February 24, 1912, whereupon the register and receiver allowed the entry and forwarded one of the duplicate receipts with the entire record, to the Commissioner of the General Land Office for his examination and approval; that subsequently, and pending the application for the patent, charges on the part of the government were filed in the General Land Office, based upon the grounds of a lack of diligent work on the part of the applicants looking to the discovery of oil, and upon the alleged lack of discovery within the proper time, and in cases Nos. 3095 and 3096 on a lack of good faith respecting the claim to the discovery of gypsum, and in case No. 3094 on the further ground of a lack of good faith on the part of the locators of the ground involved in that case.

Similar proceedings are alleged respecting the other pieces of land involved in cases 3095 and 3096, except that in case numbered 3096 the bill alleged that the application for patent to the land therein involved was not filed in the local land office until about 25 days after the commencement of the suit, and that, the statutory time for advertising not having passed, no receiver's receipt had then been issued, and in case No. 3094 the bill makes no reference to gypsum. The answers in the several cases further pleaded a lack of jurisdiction in the court to try and determine the matters alleged in the bills of complaint, or the title to the lands therein described, or the right of the defendants to their contents.

On the hearing of the applications for the appointment of a receiver in the several cases, a large amount of evidence was introduced, both on the part of the government and the defendants to the suits, including copies of all of the proceedings in the Land Department relating to the applications for patents, and showing that those proceedings are still pending and undetermined in the Land Department, although partly there heard upon evidence of the respective parties, which evidence remains unconcluded—respecting which pending proceedings there was entered into between the respective parties a stipulation which is in part as follows:

"The following facts, data, and documents hereto attached and made a part of this stipulation are hereby stipulated, by and between the respective counsel in the above-entitled action, to be correct copies of the originals, and that the copies of any documents hereto attached are to be taken the same as if the originals were hereto attached. It is furthermore stipulated that, upon any proceedings in the above-entitled action in court, the facts, matters, data, and documents hereto attached, and which are stipulated to be correct and true copies of the originals, may be introduced by either party the same as if the originals were offered, and with the same force and effect thereof, but subject to objections of counsel as to their relevancy and materiality. Attached hereto, and marked 'Exhibit A,' and made a part of this stipulation, is a copy of all the papers filed by the Lost Hills Mining Company, one of the defendants herein, in mineral entry No. 03431, upon the application of said company for a patent covering the northwest quarter (N. W. ¼) of section thirty (30), in township twenty-six (26) south, range twenty-one (21) east, M. D. B. & M., Kern county, California containing one hundred and sixty (160) acres. Attached hereto and marked 'Exhibit B,' and made a part of this stipulation, is a copy of all of the papers filed by the Lost Hills Mining Company, one of the defendants herein, in mineral entry No. 03432, upon the application of said company for a patent covering the southeast quarter (S. E. ¼) of section thirty (30) in township twenty-six (26) south, range twenty-one (21) east, M. D. B. & M., Kern county, California, containing one hundred and sixty (160) acres. Attached hereto, and marked 'Exhibit C', and made a part of the stipulation, is a copy of all of the papers filed by the Lost Hills Mining Company, one of the defendants herein, in mineral entry No. 03457, upon the application of said company for a patent covering the northeast quarter (N. E. ¼) of section thirty-two (32), in township twenty-six (26) south, range

twenty-one (21) east, M. D. B. & M., Kern county, California, containing one hundred and sixty (160) acres. Attached hereto and marked 'Exhibit D,' and made a part of this stipulation, is a copy of all of the papers filed by the Lost Hills Mining Company, one of the defendants herein in mineral entry No. 03459 upon the application of said company for a patent covering the southwest quarter (S. W. ¼). of section thirty-two (32), in township twenty-six (26) south, range twenty-one (21) east, M. D. B. & M., Kern county, California, containing one hundred and sixty (160) acres. Attached hereto, and marked 'Exhibit E' and made a part of this stipulation, is a copy of all the papers filed by the Lost Hills Mining Company, one of the defendants herein, in mineral entry No. 03448, upon the application of said company for a patent covering the northwest quarter (N. W. ¼) of section thirty-two (32), in township twenty-six (26) south, range twenty-one (21) east, M. D. B. & M., Kern county, California, containing one hundred and sixty (160) acres.

"It is furthermore stipulated that the following is a true and correct copy of a letter of the Commissioner of the General Land Office, dated Washington, November 29, 1915, clear-listing the southeast quarter (S. E. ¼) of section thirty-two (32), township twenty-six (26) south, range twenty-one (21) east, M. D. B. & M., containing one hundred and sixty (160) acres, Kern county, California. * * *" The letter of the Commissioner referred to in the stipulation was addressed to the Chief of Division N, and is in part as follows: "Sir: December 2, 1911, the Lost Hills Mining Company made mineral application No. 03458 for the Fog Horn placer mining claim, embracing the S. E. ¼ of section 32, township 26 south, R. 21 E., M. D. M. The said land was included in petroleum reserve No. 13, by executive order of October 7, 1910. No other existing withdrawals affect this land. There has been received in the record reports by special agents and a mineral inspector of this office, in which it is shown that the tract is petroleum bearing in character, and has been developed to a state of high production of this mineral. The claim was located February 14, 1907, by O. D. Barton, W. B. Wallace, Sarah McCord, C. A. Butts, Hugh McPhaill, A. Levis, R. O. Hardin, and A. H. Murry, Jr. At the same time these persons, with 28 others, also located some 22 other tracts in the vicinity. Some two years or more after location the said locators organized the Lost Hills Mining Company, a corporation, the present applicant. The several locations were transferred to the said corporation, each interested person receiving his proportionate share of the stock issued. It thus appears that there exists no reason for questioning the good faith and regularity of the said Fog Horn location. * * *"

It was that quarter section, thus clear-listed by the Commissioner, that was dropped from the bill of complaint by the amendment thereto that has been mentioned.

Joseph D. Redding, Morrison, Dunne & Brobeck, and Oscar Sutro, all of San Francisco, Cal., for appellant.

Robert O'Connor, U. S. Atty., of Los Angeles, Cal., and Henry F. May and Frank Hall, Sp. Asst. Attys. Gen., both of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The court below held that it had jurisdiction, during the pendency of the applications for patents in the Land Department, to determine whether those proceedings were fraudulent and unlawful, and, if so, to annul by its judgment any and every interest in the property and in its contents claimed by the applicants, saying in its opinion:

"It is insisted, however, that, as the applications for patents are now pending and undetermined in the Land Department the court will not assume jurisdiction, even if such applications are fraudulent and unlawful, until they are finally disposed of by the department. The Land Department is vested, conformably to the acts of Congress, with the exclusive jurisdiction to de-

termine the rights of claimants to public lands, and until it has exhausted its jurisdiction by the issuance of a patent a court will not assume to determine which of two rival claimants is entitled to the property.    Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 860. But the government is not an adverse party to a proceeding to acquire title to its property, nor is the Land Department a tribunal to which it must submit its rights, or litigate with one who has taken possession of its property or has attempted to acquire title thereto. The notice required by statute of an application for patent to a mining claim is designed and intended to cut off the rights of private claimants, and not the government of the United States. It is given in order that all persons having adverse claims may be heard in opposition to the issuance of the patent. But (section 2325, R. S. [Comp. St. 1916, § 4622]), 'if no adverse claim shall have been filed it shall be presumed that no adverse claim exists, and thereafter no objection from third persons to the issuance of patent shall be heard, except it be determined that the applicant has failed to comply with the terms of this chapter.' If, however, an adverse claim is filed during the period of publication, the adverse claimant is required by section 2326 (Comp. St. 1916, § 4623) to commence within 30 days thereafter proceedings in a court of competent jurisdiction to determine the same, thus clearly showing that the purpose of the statute is to make the proceeding binding on private parties and not the government.

"There is no reason to be found in the relation of the government to such a proceeding which will deprive it of the same right to relief, if the proceedings are fraudulent or unlawful, as an individual would have in regard to his own contract procured under similar circumstances. Indeed, there are reasons why it should not be denied the right to invoke the aid of a court by the mere receipt and acceptance of an application for a patent and the purchase price by an officer of the local land office; for, as said by Mr. Justice Miller in United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110: 'In nine cases out of ten, perhaps in a much larger percentage, the proceedings are wholly ex parte. In the absence of any contesting claimant for a right to purchase or secure the land, the party applying has it all his own way. He makes his own statement, sworn to before those officers, and he produces affidavits. If these affidavits meet the requirements of the law, the claimant succeeds, and what is required is so well known that it is reduced to a formula. It is not possible for the officers of the government, except in a few rare instances, to know anything of the truth or falsehood of these statements. In the cases where there is no contesting claimant, there is no adversary proceeding whatever. The United States is passive; it opposes no resistance to the establishment of the claim, and makes no issue on the statement of the claimant. When, therefore, he succeeds by misrepresentation, by fraudulent practices, aided by perjury, there would seem to be more reason why the United States, as the owner of land of which it has been defrauded by these means, should have remedy against that fraud—all the remedy which the courts can give—than in the case of a private owner of a few acres of land on whom a like fraud has been practiced.' I am of the opinion, therefore, that the court has jurisdiction to try the questions involved in these cases."

We are unable to sustain that position of the learned judge, and are of the opinion that the case cited in support of it—United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110—in no respect does so. That was a suit brought by the government to annul a patent it had issued for land, on the ground of fraud practiced in the procurement of its issue—a wholly different question, and one upon which the authorities are practically all one way. Among the very numerous cases upon the subject, see Johnson v. Towsley, 13 Wall. 72, 83, 20 L. Ed. 485; Steel v. St. Louis Smelting Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; Marquez v. Frisbie, 101 U. S. 473, 25

L. Ed. 800; United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167; Cosmos Exploration Co. v. Grey Eagle Co., 190 U. S. 301, 315, 23 Sup. Ct. 692, 24 Sup. Ct. 860, 47 L. Ed. 1064; United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499; Love v. Flahive, 205 U. S. 195, 27 Sup. Ct. 486, 51 L. Ed. 768; Garfield v. United States, 211 U. S. 264, 29 Sup. Ct. 67, 53 L. Ed. 176. Here, however, the charges of fraud complained of were made in the course of the proceedings in the Land Office, are there pending and under investigation, and are as yet undetermined. Nothing in our public land laws is more firmly settled than that the sale and disposal of the public lands has been placed by statute under the control of the Land Department, at the head of which is the Secretary of the Interior, and which includes a bureau headed by the Commissioner of the General Land Office, to whom, as a special tribunal with quasi judicial powers, Congress has confided the execution of the laws which it has enacted for the sale and disposal of the various kinds of public lands. As was said in Cosmos Exploration Co. v. Grey Eagle Oil Co. (C. C.) 104 Fed. 20, no court can lawfully anticipate what the decision of that department may be in respect to any contest arising before it, nor direct in advance what its decision should be, even in matters of law, much less in respect to matters of fact. After, however, the proceedings in the Land Department have come to an end by the issuing of the government title, that the courts are open for the control of such title, either by the government, in the event that its title has been procured either by fraud or in any other illegal way, or at the suit of any private party equitably entitled thereto, is established by almost innumerable decisions, some of which are cited above.

[2] The court below further said in its opinion, to which reference has been made, that if it was wrong in its view as to its power to determine the rights of the applicants for the patents pending the proceedings therefor in the Land Department, it was nevertheless of opinion that the government was clearly entitled, upon the allegations of the bills and the showing made, to the protection by the court of the property involved from waste and destruction pending the final determination of its rights in the Land Department. Based upon a sufficient bill, we quite agree that a court of equity has such power, and that it is its duty to exercise that power. This court so held in El Dora Oil Co. v. United States, 229 Fed. 946, 144 C. C. A. 228; but in the instant cases the bills are not based upon any such power of the court, and there is not only no allegation, but not even a reference in either of the bills, regarding any proceeding in the land office respecting the lands in question. On the contrary, the bills, as will have been seen from the statement of the case, make the very astonishing allegation that:

"Except as in this bill stated, the plaintiff has no other knowledge or information concerning the nature of any other claims asserted by the defendants herein, or any of them, and therefore leaves said defendants to set forth their respective claims and interests."

In considering a similar question in the case of Cosmos Exploration Co. v. Grey Eagle Oil Co., supra, 190 U. S. 315, 23 Sup. Ct. 692, 24 Sup. Ct. 860, 47 L. Ed. 1064, the Supreme Court said:

"The bill is not based upon any alleged power of the court to prevent the taking out of mineral from the land, pending the decision of the Land Department upon the rights of the complainant, and the court has not been asked by any averments in the bill, or in the prayer for relief, to consider that question. For the reasons stated, we think the bill does not state sufficient facts upon which to base the relief asked for, and that the defendants' demurrer to the same was properly sustained."

In subsequently modifying, on petition, its judgment of affirmance in that case, the court directed that the decree dismissing the bill be modified, "without prejudice to such future proceedings as complainant may be advised," and that, as so modified, it should stand affirmed. While, for the reasons already stated, we are of the opinion that the court below was and is without power to determine the rights of the appellants in or to the lands in question, or their contents, pending the determination thereof by the Land Department, or in any way to forestall the latter's decision thereof, and that the allegations of the bills—which are, in effect, mere suits to quiet the complainant's title to the lands, and to enjoin the defendants thereto from committing trespass and waste thereon, and for the appointment of a receiver of the property pending the litigation—are insufficient, as they stand, to sustain the appointment of a receiver in view of the facts set up in the answers and shown in the proofs, yet in view of those averments, and of those facts, we have no doubt of the jurisdiction of the court to protect the property in question from waste and its contents from appropriation by the appellants, pending the determination of their alleged rights thereto by the appropriate tribunal—the latter obviously having no power to afford such protection—and that, upon so amending the bills in the court below as to conform to the proofs made, the possession of the property by the court below through its receivers, pending the proceedings in the Land Department, should be continued.

The cases are therefore remanded, with directions to the court below to permit the bill in each case to be so amended within a reasonable time, to be fixed by the court, as to conform to the proofs, the order appealed from in each case to stand affirmed upon the filing of such amendment; and in the event of the failure of the complainant to so amend the bills, or either of them, such order as to which such failure shall occur to stand reversed, with directions to dismiss such bill—neither party to recover costs of these appeals.